John Wesely **HOREJSI**, an infant, by his Guardian ad Litem, William AN-TON, Plaintiff and Appellant,

v.

Brenda **ANDERSON**, James Anderson and Bernadette Anderson, Defendants,

and

Wallace F. Horejsi and Karen Horejsi, Defendants and Appellees.

Civ. No. 10608.

Supreme Court of North Dakota.

July 27, 1984.

Kuchera, Stenehjem & Wills, Grand Forks, for plaintiff and appellant; argued by Thomas John Kuchera, Grand Forks.

O'Grady, Morley & Morley, Grand Forks, for defendants and appellees; argued by Michael J. Morley, Grand Forks.

ERICKSTAD, Chief Justice.

Plaintiff John Wesely Horejsi, through his guardian ad litem, appeals from the summary judgment dismissing that part of his cause of action against his parents, Wallace and Karen Horejsi, which was based upon the doctrine of respondeat superior. We affirm.

During the summer of 1979, Brenda Anderson, an eleven-year-old girl, was regularly employed by the Horejsis to care for John during the day while they were at work. On July 2, 1979, Brenda administered a severe beating to John, then less than one year old, resulting in severe and permanent injuries to the infant.

John's grandfather, William Anton, was appointed guardian ad litem for purposes of bringing an action on John's behalf against Brenda Anderson, her parents, and Wallace and Karen Horejsi. The complaint alleged separate counts of negligence against Brenda Anderson and John's parents, and respondeat superior liability against Brenda's parents and John's parents.

After extensive negotiations, John's claim against Brenda Anderson and her parents was settled. The Andersons received a full and final release discharging them from all further claims arising out of the incident. The settlement and release were approved by the court.

John's parents subsequently moved for summary judgment on the respondeat superior count, claiming that release of their employee (Brenda) released them from liability as employers. The district court granted partial summary judgment,[1] and John appeals.

The sole question presented on appeal is whether or not the release of a servant also releases the master from respondeat superior liability. Although this issue has been frequently litigated in other jurisdictions, see Annot., 24 A.L.R. 4th 547 (1983), it is one of first impression in our Court.

Although the majority rule in the United States favors discharge of the master upon release of the servant, see 53 Am.Jur.2d Master and Servant § 408 (1970), John argues that the adoption of the Uniform Contribution Among Tortfeasors Act by our State, codified as Chapter 32–38, N.D. C.C., requires an opposite result. John points to Section 32–38–04, N.D.C.C., in support of this contention. A majority of those states, which have adopted the Uniform Contribution Among Tortfeasors Act and subsequently addressed this issue, have held that a release of the servant does not release the master. See Harris v. Aluminum Co. of America, 550 F.Supp. 1024, 1030 (W.D.Va.1982) (applying Virginia law); Alaska Airlines, Inc. v. Sweat, 568 P.2d 916, 930 (Alaska 1977); Holve v. Draper, 95 Idaho 193, 505 P.2d 1265, 1268–1269 (1973); Smith v. Raparot, 101 R.I. 565, 225 A.2d 666, 667 (1967). John's parents urge us to follow the reasoning of the Supreme Court of Tennessee, which concluded, in Craven v. Lawson, 534 S.W.2d 653, 656–657 (Tenn.1976), that the Uniform Act does not apply to the derivative or vicarious liability of masters or principals.

---

**1.** John's other claim against his parents, based upon their alleged negligence in hiring and retaining Brenda, has not yet been tried. The court issued an order pursuant to Rule 54(b), N.D.R.Civ.P., certifying that there was no just reason for delay and ordering entry of a final judgment on the respondeat superior claim.

Although we agree with John that the provisions of the Uniform Act, as codified in Chapter 32–38, N.D.C.C., apply to a master-servant situation, we conclude that cases from other jurisdictions are inapposite because pertinent sections of the North Dakota act have been impliedly repealed by the subsequent legislative adoption of comparative negligence. *See* Section 9–10–07, N.D.C.C.; *Bartels v. City of Williston,* 276 N.W.2d 113, 121 (N.D.1979).

In *Bartels, supra,* addressing the obvious conflicts between Chapter 32–38 and our comparative negligence statute, Section 9–10–07, N.D.C.C., we held that the legislature's adoption of comparative negligence had impliedly repealed certain provisions in Chapter 32–38. More specifically, we held that Section 32–38–04(1) had been impliedly amended to provide:

> *32–38–04. Release or covenant not to sue.*—When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> 1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent *of the relative degree of fault (percentage of negligence) attributable to the released joint tort-feasors.*

Section 32–38–02(2), N.D.C.C., which was not affected by our holding in *Bartels,* provides:

> *"32–38–02. Pro rata shares.*—In determining the pro rata shares of tort-feasors in the entire liability:
>
>     \*      \*      \*      \*      \*      \*
>
> 2. If equity requires the collective liability of some as a group shall constitute a single share."

The Commissioners' Comment to this section states in part:

> "[I]t [the section] invokes the rule of equity which requires class liability, including the common liability arising from vicarious relationships, to be treated as a single share. For instance the liability of a master and servant for the wrong of the servant should in fairness be treated as a single share."

■ Construing Sections 32–38–02 and 32–38–04 together, we hold that release of a servant for his wrongful conduct also releases the master from vicarious liability. Pursuant to Section 32–38–04(1), release of the servant reduces the claim against other non-released tort-feasors to the extent of the relative degree of fault (percentage of negligence) attributable to the released wrongdoer servant. The "percentage of negligence" attributable to the conduct of the servant constitutes the entire "single share" of liability attributable jointly to the master and servant. Thus, when the plaintiff releases the servant he gives up his right to recover, from either the master or servant, damages caused by the servant's negligence. Because this percentage of negligence represents the "single share" of liability covered by the common liability of the master and servant, the master is necessarily released from vicarious liability for the released servant's misconduct.

John asserts that allowing the master to be released under these circumstances will discourage settlements and lead to increased litigation, because plaintiffs will be unwilling to settle with a servant if the master's vicarious liability is automatically discharged as well. While there is some merit to John's argument, we believe that the result he would have us reach would have an even greater tendency to discourage settlements.

■ If we were to hold that the vicarious liability of John's parents was not discharged by the release, the end result may be that Brenda would be liable to them for indemnity. A party is entitled to indemnity when he has only a derivative or vicarious liability for damage caused by the one sought to be charged. *Herman v. General Irrigation Co.,* 247 N.W.2d 472, 480 (N.D. 1976); *Sayler v. Holstrom,* 239 N.W.2d 276, 280 (N.D.1976). Section 32–38–01(6) makes it clear that the Uniform Act does

not affect the right of a master to indemnity from his servant:

"This chapter does not impair any right or [of] indemnity under existing law. Where one tort-feasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation."

Thus, Brenda, although released from the action by John, may eventually be required to indemnify John's parents for the percentage of the recovery attributable to her wrongful conduct. She would, in effect, receive no protection from the settlement agreement. This problem has been noted by one commentator:

"On the other hand, allowing the suit against the master or principal after a settlement with the servant or agent would reduce the incentive for the servant or agent to settle since he would still be liable for indemnity to the master or principal. This latter construction would probably discourage settlements more than would the *Craven* construction. If suit were brought against the master or principal, he might be lax in defending the suit, secure in the knowledge that whatever damages are assessed against him can be recovered by way of indemnity from the servant or agent. The possibility of such conduct by the master or principal may well induce the servant or agent in order to protect his own interests to go to trial rather than to settle."

Comment, *Torts—Vicarious Liability— Covenant Not to Sue Servant or Agent as Affecting Liability of Master or Principal*, 44 Tenn.L.Rev. 188, 198 (1976).

Carrying the scenario one step further, John could conceivably be required to reimburse Brenda for any amounts paid to John's parents by way of indemnity. The settlement agreement provides that John shall indemnify the Andersons and "save, protect and hold them forever harmless from all and any claims for contribution, *indemnification,* or otherwise, made by any persons, ..." (Emphasis added.) Thus, assuming that a judgment is entered against John's parents and they seek indemnification from Brenda, it might be argued that the amount of indemnity would have to be reimbursed by John. In that event, the final result would be that John would receive exactly what he has now received in settlement for Brenda's part of the negligence—the amount of the settlement.

The Supreme Court of Utah has also discussed such a result in *Holmstead v. Abbott G.M. Diesel, Inc.*, 27 Utah 2d 109, 493 P.2d 625, 628 (1972):

"It is true that plaintiff and the servant cannot destroy defendant's right of indemnity without its consent and therefore defendant is still entitled to indemnity. However, as the court observed in *Simpson v. Townsley* [283 F.2d 743 (10th Cir.1960)] the covenant not to sue would be wholly abortive of its intended object and purpose if it went no further than to protect the employee against a direct action by the injured party but afforded no protection against an action over by his employer. If the covenant be so narrowly construed, the payment made as consideration would constitute no more than a credit on the amount which the injured person might ultimately recover under a judgment, and the employee would remain liable for the remainder. The court determined that the covenant not to sue was intended to protect the employee against liability, direct or indirect, for damages resulting to the injured party from the accident. The court concluded that the covenant not to sue constituted a complete exoneration of the employee and removed any foundation upon which to impute negligence to the employer.

"Since plaintiff has not claimed, in the instant action, that the covenant not to sue was to protect Gideon Allen solely against direct liability to plaintiff, and the specific language of the agreement militates against such narrow interpretation, we are compelled to conclude that there were no rights against defendant

320

to be reserved. Defendant's liability was merely derivative and secondary; the exoneration of servant, Allen, prevented the imputing of his negligence to defendant." [Footnotes omitted.]

*See also Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805, 812–814 (Tex.1980) (Garwood, J., concurring) (discussing the "circuity of action" in such cases).

We do not believe that our legislature intended such a circuitous procedure. The result of our interpretation of the statutes avoids the indemnity cycle and ensures the released tort-feasor that he has "bought his peace."

We hold that the release of the servant Brenda by the infant plaintiff John through his guardian ad litem, William Anton, released the masters, Wallace and Karen Horejsi, from any liability which is based upon respondeat superior. The judgment of the district court is affirmed.

SAND, GIERKE, PEDERSON and VANDE WALLE, JJ., concur.