1997 ND 46

**Melvin KEATOR, Plaintiff and Appellant,**

v.

**Dr. Brian D. GALE, Defendant and Appellee,**

**Dr. Aaron Olson, Defendant.**

**Civil No. 960242.**

Supreme Court of North Dakota.

April 1, 1997.

Ralph A. Vinje, of Vinje Law Firm, Bismarck, for plaintiff and appellant.

Randall J. Bakke and Scott K. Porsborg, of Smith Bakke Hovland & Oppegard, Bismarck, for defendant and appellee.

SANDSTROM, Acting Chief Justice.

[¶ 1] In this medical malpractice action, we are asked to decide if the release of the employer from liability also releases the employee. Concluding it does not, we reverse the order for summary judgment and remand for further proceedings.

I

[¶ 2] In 1993, Keator was treated by Dr. Gale, a podiatrist. Keator subsequently sued Dr. Gale for medical malpractice, alleging Dr. Gale's negligence and misdiagnosis caused

permanent disability and the need for further treatment and surgeries. Dr. Gale answered the complaint, denying he was negligent and alleging Keator's injuries were caused by negligence of "others over whom [Dr. Gale] had no responsibility or control." In response to interrogatories about the identity of these "others," Dr. Gale answered he acted "under the direction and control of his employer, Dr. Aaron Olson," and "Dr. Gale's actions were at all times pertinent herein taken at the direction of his employer, Dr. Aaron Olson."

[¶ 3] In response, Keator served an amended complaint adding Dr. Olson as a defendant. Further discovery revealed Dr. Olson was not Dr. Gale's employer at the time Dr. Gale treated Keator. Rather, both Dr. Gale and Dr. Olson were employed by Family Foot and Ankle Clinic, P.C. (Clinic) at that time. Based upon these revelations, Keator executed a release in favor of Dr. Olson, executed a release and settlement with the Clinic, and moved to amend his complaint to delete the claim against Dr. Olson. The *Pierringer* releases [1] Keator executed in favor of Dr. Olson and the Clinic specifically reserved all claims against Dr. Gale.

[¶ 4] Dr. Gale moved for summary judgment, asserting the release of his employer, the Clinic, also as a matter of law released all claims against him. The trial court, relying upon *Horejsi v. Anderson*, 353 N.W.2d 316 (N.D.1984), concluded the release of the employer automatically released the employee. The court granted Dr. Gale's motion for summary judgment and dismissed Keator's complaint. Keator appealed.

[¶ 5] The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under Art. VI, § 6, and N.D.C.C. § 28–27–02.[2] The appeal is timely under N.D.R.App.P. 4(a).

## II

[¶ 6] The dispositive issue on appeal is whether the release of a vicariously liable master by a *Pierringer* release also as a matter of law releases the directly negligent servant. This issue is raised in the posture of a summary judgment.

### A

[¶ 7] Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D.1996); *Lire v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433 (N.D. 1995). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which may reasonably be drawn from the evidence. *Diegel* at 370. On appeal, this Court decides if the information available to the trial court precludes the existence of a genuine issue of material fact and entitles the moving party to summary judgment as a matter of law. *State Farm Mutual Automobile Insurance Co. v. Estate of Gabel*, 539 N.W.2d 290, 292 (N.D.1995). Questions of law are fully reviewable on appeal. *State Farm* at 292.

### B

[¶ 8] There is a split of authority whether release of a master's vicarious liability also releases the directly negligent servant's primary liability as a matter of law. *See* cases collected in Annotation, *Release of (or Covenant Not to Sue) Master or Principal as Affecting Liability of Servant or Agent for Tort, or Vice Versa*, 92 A.L.R.2d

1. *See Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963); *see also Bartels v. City of Williston*, 276 N.W.2d 113 (N.D.1979).

2. No formal judgment was entered, and Keator appealed from an order granting the motion for summary judgment. Although an order granting summary judgment is not generally appealable, we will treat it as an appealable final order when, as here, it was obviously intended to be final. *Timmerman Leasing, Inc. v. Christianson*, 525 N.W.2d 659, 660 n. 1 (N.D.1994); *Sime v. Tvenge Associates Architects & Planners, P.C.*, 488 N.W.2d 606, 608 (N.D.1992).

533 (1963). Under the majority common law rule, release of one party to the master-servant relationship automatically released the other. Annot., 92 A.L.R.2d at § 2; *see Horejsi*, 353 N.W.2d at 317. The general rule, however, has been modified in many jurisdictions by statutes, including the Uniform Contribution Among Tortfeasors Act. Annot., 92 A.L.R.2d at § 2; *Horejsi* at 317–318.

[¶ 9] Dr. Gale asserts our decision in *Horejsi* is controlling. In *Horejsi*, the plaintiff settled with the directly negligent employee, then sought to pursue his claim against the vicariously liable employer. In that context, we held the release of the employee constituted a release of the "single share" of liability attributable jointly to the master and servant. *Horejsi* at 318. Thus, the master's vicarious liability was released.

[¶ 10] This case, however, presents the converse of the *Horejsi* situation. Dr. Gale nevertheless argues the "single share" concept requires a corresponding result in this case: the release of the vicariously liable employer must also release the entire "single share" of the master and servant's joint liability. *Horejsi*, however, was intended to apply only when the directly negligent tortfeasor has been released:

> "[W]hen the plaintiff releases the servant he gives up his right to recover, from either the master or servant, damages caused by the servant's negligence. Because this percentage of negligence represents the 'single share' of liability covered by the common liability of the master and servant, the master is necessarily released from vicarious liability for the released servant's misconduct."

*Horejsi* at 318; *see also McLean v. Kirby Co.*, 490 N.W.2d 229, 244–245 (N.D.1992).

[¶ 11] There are far different policy concerns presented when an actively negligent tortfeasor seeks to escape liability by a plaintiff's release of a vicariously liable master. The result in *Horejsi* is premised to a great degree upon the active/passive distinction between the liability of the servant and the master. A master's vicarious liability is based entirely upon the underlying wrongful conduct of the servant, not upon any active wrongdoing by the master. Thus, release of the servant "remove[s] any foundation upon which to impute negligence to the employer." *Horejsi* at 319 (quoting *Holmstead v. Abbott G.M. Diesel, Inc.*, 27 Utah 2d 109, 493 P.2d 625, 628 (1972)).

[¶ 12] Other courts facing this issue have concluded the policy reasons requiring release of the master when the servant's liability is released do not apply when the converse situation is presented and the negligent servant seeks to escape liability based upon the release of the master. For example, in *Vanderpool v. Grange Insurance Association*, 110 Wash.2d 483, 756 P.2d 111, 113 (1988), the court reasoned:

> "When ... a plaintiff settles with a solvent agent from whom he could have received full compensation, the very foundation of the principal's liability is undermined. A principal is only secondarily liable under a respondeat superior theory. The policy reasons underlying vicarious liability (to afford the plaintiff the maximum opportunity to be fully compensated) are inapplicable when a plaintiff has accepted a release from the primarily liable tortfeasor who was financially capable of making him whole. There is no policy reason to allow that plaintiff to then pursue a claim against the defendant who is only secondarily liable."

Similarly, the court in *Hill v. McDonald*, 442 A.2d 133, 138 n. 5 (D.C.1982), stated:

> "Certainly, as a matter of logic, it is hard to see how a *principal* could still be held vicariously liable after the release of its *agent*, the only real wrongdoer. But the converse is not at all obvious."

*See also Smith v. Childs*, 198 Mich.App. 94, 497 N.W.2d 538, 541 (1993) (quoting *Theophelis v. Lansing General Hospital*, 430 Mich. 473, 424 N.W.2d 478, 486 (1988)) (" 'any other result would be illogical and unjust because release of the agent removes the only basis for imputing liability to the principal.' ... However, it is equally true that the liability of the agent is not dependent upon the agent's relationship to the principal but is attributable to his own misconduct."); *Kellen v. Mathias*, 519 N.W.2d 218, 222 (Minn.Ct.

App.1994) ("No policy reason exists to release an agent where the principal is released, absent an intent to release both parties."); *cf. Houser v. Gilbert*, 364 N.W.2d 62, 65 (N.D.1985) (a release generally does not extinguish claims expressly reserved in the release).

[¶ 13] The result in *Horejsi* was effectively pre-ordained by the nature of a *Pierringer* release and the vicariously liable master's right to indemnity against the servant. The plaintiff's agreement to indemnify the settling defendant for any subsequent claims for indemnity or contribution is an "indispensable characteristic" of a *Pierringer* release. *Kellen* at 222. A vicariously liable party is entitled to indemnity from the party who directly caused the injury. *Horejsi* at 318–319. We thus noted in *Horejsi* that a circle of indemnity would be created if the release of the servant did not release the vicarious liability of the master: If the plaintiff recovered at trial from the non-settling master, the master would have a right of indemnity against the released servant, who, under the terms of the release, would have a right of indemnity against the plaintiff. Thus, the circle is completed, leaving the plaintiff with no additional recovery through the suit against the master. *See Horejsi* at 318–320. The release of the servant effectively precludes any meaningful recovery from the vicariously liable master. *Horejsi; see also Thompson v. Brule*, 37 F.3d 1297, 1301 (8th Cir.1994); *Jakubs v. Fruehauf Corp.*, 435 F.Supp. 908, 908 (N.D.Ill.1977); *Kellen* at 222.

[¶ 14] The result is vastly different when the master is released and the negligent servant is sued. Because the servant has no corresponding right to indemnity from the master, the circle of indemnity does not exist. Unlike the situation in *Horejsi*, Dr. Gale has no right of indemnity against his employer, the Clinic, for damages he may be ordered to pay for his own negligent conduct. Thus, the policy concerns expressed in *Horejsi* are absent in this case.

### III

[¶ 15] We conclude the release of the Clinic did not as a matter of law release Keator's claims against Dr. Gale for Dr. Gale's own active negligence. The trial court's grant of summary judgment was based upon an erroneous view of the law and is reversed. The cause is remanded for further proceedings consistent with this opinion.

[¶ 16] NEUMANN, MARING and MESCHKE, JJ., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

[¶ 17] RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of VANDE WALLE, C.J., disqualified.

