**v.**

**R.P., individually and as a duly ordained and credentialed pastor and member of the North Dakota Conference of the Methodist Church d/b/a United Methodist Church Dakotas Area, Defendant,**

**and**

**The North Dakota Conference of the Methodist Church d/b/a United Methodist Church Dakotas Area, Defendant and Appellee.**

**Civil No. 960156.**

Supreme Court of North Dakota.

May 16, 1997.

Charles T. Hvass, Jr. (argued), Minneapolis, MN, for plaintiff and appellant.

Leo F.J. Wilking (argued), of Nilles, Hansen & Davies, Ltd., Fargo, for defendant and appellee.

MESCHKE, Justice.

[¶ 1] Lynn Cheshire appealed from a summary judgment dismissing her action against the North Dakota Conference of the United Methodist Church d/b/a United Methodist Church Dakotas Area (Conference). We hold that a stipulation to dismiss Cheshire's claims against Robert Paul, a pastor in the Conference, released Cheshire's claims against the Conference for vicarious liability arising from Paul's sexual relationship with Cheshire. We also hold that Cheshire failed to raise a genuine issue of material fact about whether the Conference breached a fiduciary duty to protect Cheshire from Paul's acts. We affirm.

[¶ 2] In February 1983, Cheshire's husband, a United States Marshall in Bismarck, was killed in the line of duty. Paul, a pastor at McCabe United Methodist Church in Bismarck, formally counseled Cheshire, a parishioner at McCabe, through January 1984.

Paul thereafter engaged in informal counseling with Cheshire, and in July 1984, they began a sexual relationship.

[¶ 3] In April 1985, Paul moved to Nashville, Tennessee, to work as a director of adult education in the United Methodist Church. Paul and Cheshire continued their sexual relationship until March 1992 with meetings four or five times a year at workshops throughout the country. In January 1993, Cheshire informed Bishop William Lewis of the Conference about Paul's relationship with her, and Paul was removed from his position in the Methodist church.

[¶ 4] Cheshire sued Paul and the Conference, alleging (1) they breached a fiduciary duty to her, and (2) the Conference was vicariously liable for Paul's acts.[1] She alleged that the death of her husband placed her in a vulnerable position, and Paul, as pastor and counselor, abused his fiduciary relationship with her. She claimed that Bishop Boulton and the Conference were informed about the sexual relationship on two different occasions in 1984 and failed to take appropriate action.

[¶ 5] The trial court granted the Conference's motion for summary judgment. The court ruled, as a matter of law, that the Conference had not assumed a fiduciary duty to Cheshire and was not vicariously liable for Paul's acts. Cheshire appealed from the judgment dismissing her action against the Conference. We "temporarily remanded ... for consideration of the Stipulation of Dismissal with Prejudice [of Cheshire's claims against Paul] and entry of an appropriate judgment." See NDRCivP 54(b). The parties thereafter filed a stipulation that Cheshire's claims against Paul "individually, and as a duly ordained and credentialed pastor and member of the ... Conference, ..., may be dismissed with prejudice, without costs and without further notice to the parties."[2] A judgment incorporating the parties' stipulation was entered.

---

1. Cheshire's complaint also alleged the Conference negligently supervised Paul. During oral argument to this court, Cheshire conceded she was not pursuing that claim.

2. In ruling on the Conference's motion for summary judgment, the trial court acknowledged that the parties had represented Cheshire had settled her claims against Paul, but noted that nothing in the file documented their representation.

[¶ 6] We consider Cheshire's appeal from the dismissal of her claims against the Conference as a summary judgment. That is a procedure for promptly deciding an action without a trial if, after viewing the evidence and possible inferences in the light most favorable to the litigant opposing the motion, there is no genuine dispute about the material facts or the inferences from the undisputed facts, or if only a question of law is involved. *Medcenter One, Inc. v. North Dakota State Bd. of Pharmacy*, 1997 ND 54, ¶ 7, 561 N.W.2d 634. Although the litigant seeking summary judgment bears the initial burden of showing there is no genuine issue of material fact, the litigant resisting the motion may not simply rely upon the pleadings, or upon unsupported conclusory allegations. *Kummer v. City of Fargo*, 516 N.W.2d 294, 296–97 (N.D.1994). Factual assertions in a brief are insufficient under NDRCivP 56(e) to raise an issue of material fact. *Kemp v. City of Grand Forks*, 523 N.W.2d 406, 408 (N.D.1994). A litigant resisting a motion for summary judgment may not merely reassert allegations in pleadings in order to defeat the motion. *Id.* Rather, the resisting litigant must present competent, admissible evidence by affidavit or by other comparable means to raise an issue of material fact. *Kummer*, 516 N.W.2d at 296–97. As we explained in *Medcenter*, 1997 ND 54, ¶ 7, 561 N.W.2d 634, summary judgment is proper when a litigant fails to raise a factual dispute about an element essential to that party's claim.

[¶ 7] Cheshire argues the Conference is vicariously liable for Paul's acts. We disagree.

[¶ 8] In *Horejsi v. Anderson*, 353 N.W.2d 316, 318 (N.D.1984), we held the release of a servant for tortious acts also released the master from vicarious liability. Our decision in *Horejsi* was premised on avoiding a circle of indemnity that would have resulted if the release of the servant did not also release the master from vicarious liability. *Compare Keator v. Gale*, 1997 ND 46, ¶ 15, 561 N.W.2d 286 (release of master, as a matter of law, did not release claims against servant for servant's active negligence). The same circle-of-indemnity concerns in *Horejsi* are present here. We conclude, as a matter of law, the parties' stipulation to dismiss Cheshire's claims against Paul operated to release the Conference from any claim of vicarious liability for Paul's acts.

[¶ 9] The release of a servant, however, does not release the master from liability for claims independent of any theory of vicarious liability. *Hart Const. v. American Family Mut. Ins.*, 514 N.W.2d 384, 391 (N.D. 1994). We thus consider Cheshire's claim for direct liability against the Conference.

[¶ 10] Cheshire contends, because Bishop Boulton and the Conference were told about Paul's conduct and failed to take appropriate action, the Conference breached a fiduciary duty to her. She asserts the Conference's knowledge of Paul's conduct raises factual disputes about whether the Conference assumed a fiduciary duty.

[¶ 11] In cases involving counseling and sexual relations between clergy and parishioners, some courts have allowed claims against the offending clergy or the church hierarchy for breach of a fiduciary duty. *See Sanders v. Casa View Baptist Church*, 898 F.Supp. 1169, 1176 (N.D.Tex.1995); *Moses v. Diocese of Colorado*, 863 P.2d 310, 321–23 (Colo.1993), *cert. denied*, 511 U.S. 1137, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994); *Destefano v. Grabrian*, 763 P.2d 275, 284 (Colo. 1988); *Erickson v. Christenson*, 99 Or.App. 104, 781 P.2d 383, 385 (1989). In like contexts, other courts have rejected claims against the offending clergy and the church hierarchy for breach of a fiduciary duty. *See Schmidt v. Bishop*, 779 F.Supp. 321, 325–26 (S.D.N.Y.1991); *Schieffer v. Catholic Archdiocese of Omaha*, 244 Neb. 715, 508 N.W.2d 907, 911–913 (1993); *Strock v. Pressnell*, 38 Ohio. St.3d 207, 527 N.E.2d 1235 (1988); *Bladen v. First Presbyterian Church*, 857 P.2d 789 (Okla.1993). Here, we need not decide the existence or parameters of a breach-of-fiduciary claim, because, assuming we would recognize that claim, Cheshire has not assembled a factual basis to show the Conference assumed a fiduciary duty to her.

[¶ 12] A prerequisite to finding a fiduciary duty is the existence of a fiduciary relationship. We have identified a fiduciary relationship as "something approximating

business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance ... ordinarily exercise[d]." *Asleson v. West Branch Land Co.*, 311 N.W.2d 533, 539 (N.D. 1981). A fiduciary relationship exists when one is under a duty to act or give advice for the benefit of another upon matters within the scope of the relationship. Restatement (Second) of Torts § 874, comment a (1979). A fiduciary relationship generally arises when there is an unequal relationship between the parties. *Moses*, 863 P.2d at 322. *Compare Land Office Co. v. Clapp–Thomssen Co.*, 442 N.W.2d 401, 406 (N.D.1989) (fiduciary relationship ordinarily does not exist when business persons deal at arm's length). In creating a fiduciary relationship, the superior party must assume a duty to act in the dependent party's best interest. *Moses*, 863 P.2d at 322. As we explained in *Production Credit Ass'n of Fargo v. Ista*, 451 N.W.2d 118, 121 (N.D.1990), whether a fiduciary relationship exists is generally a question of fact.

[¶ 13] Here, the trial court ruled the Conference was at least one step removed from Paul and had not assumed a fiduciary duty to Cheshire. Although there was evidence Bishop Boulton and the Conference were informed about the intimacy between Paul and Cheshire, we are not persuaded that knowledge, by itself and without some other action to assume control of the matter, raises an inference that the Conference assumed a fiduciary duty to Cheshire. *Compare Moses*, 863 P.2d at 321–22 (affirming jury's finding church hierarchy and Bishop assumed fiduciary duty to parishioner where parishioner personally informed church hierarchy about relationship and church hierarchy assumed control of the matter and told parishioner Bishop would take care of situation). In this case, there is no evidence that Cheshire relied on the Conference in any way.

[¶ 14] Cheshire nevertheless argues the Book of Discipline of the United Methodist Church imposed a fiduciary duty on the Bishop and the Conference to investigate, charge,

and try clergy for sexual improprieties. This record does not support her argument.

[¶ 15] Although Cheshire included a *1992* edition of the Book of Discipline in the appendix to her brief to this court, the Book of Discipline is not part of the record before this court. *See* NDRAppP 10(a) (record on appeal consists of "original papers and exhibits filed in the trial court, three copies of the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the trial court"). During oral argument to this court, Cheshire's counsel indicated the Book of Discipline had been attached to a brief filed in the trial court. The record before this court includes Cheshire's trial brief; however, the Book of Discipline is not attached to that brief. The Conference also indicated it had attached excerpts from the Book of Discipline to an affidavit of Bishop Lewis. The affidavit of Bishop Lewis refers to a *1984* edition of the Book of Discipline, but no excerpts from that edition of the Book of Discipline are in the record before this court. Despite concerns expressed about the adequacy of the record during oral argument to this court, no steps have been taken under NDRAppP 10(h) to correct or modify the record. *See Kristianson v. Flying J Oil & Gas, Inc.*, 553 N.W.2d 186, 188 n. 3 (1996) (explaining counsel's responsibility to ensure materials submitted to trial court are filed and become part of the record on appeal).[3]

[¶ 16] Rather, the Conference supported its motion for summary judgment with a legal brief, excerpts from depositions of Cheshire and Paul, and an affidavit by Bishop Lewis, who averred:

3. In 1984 the United Methodist Church–Dakotas Area consisted of two conferences, one conference being the North Dakota Conference, comprised of the State of North Dakota, and the other conference being the South Dakota Conference, comprised of the State of South Dakota.

---

**3.** The trial court's memorandum opinion also cites the Book of Discipline for the relatively insignificant proposition that it "requires the Bishop to evaluate pastors annually." To the

extent a trial court relies on information that is not made part of the record before this court, meaningful appellate review is precluded and the court's decision is unsupported by the record.

4. Each conference had its own bishop and was itself divided into geographical districts, with each district headed by a district superintendent under the supervision of the bishop. The North Dakota Conference had three districts—Eastern, Central and Western—and the McCabe United Methodist Church in Bismarck was in the Western District.

5. In 1984, the North Dakota Conference of the United Methodist Church had 147 churches, 147 ministers, and 21,156 members (parishioners).

6. Contact between an individual member of McCabe United Methodist Church and either the bishop or the Western District superintendent would have been extremely infrequent as a general rule. The district superintendent would have visited McCabe no more than two to three times per year in his official capacity, and the bishop would have visited McCabe even less frequently.

7. The Book of Discipline of the United Methodist Church (1984) contains the constitution, doctrine and general rules of our Church. It defines the duties and responsibilities of bishops, district superintendents, and local ministers.

8. Neither the bishop nor the district superintendent have responsibility for direct pastoral care of parishioners in individual congregations. Paragraphs 514–524, Book of Discipline of the United Methodist Church (1984). Such functions are the responsibility of the local church minister.

[¶ 17] Cheshire responded to the Conference's motion with a legal brief and an affidavit by Jeffrey Geiger, who asserted:

3. In my capacity as Chair of the Pastor Parish Relations Committee, I received information that Pastor Robert Paul was having sexual relations with Mrs. Lynn Cheshire.

4. Pursuant to that information, I asked for and was given a personal audience with Bishop Boulton.

5. At that time Bishop Boulton was the head of the North Dakota Conference of the Methodist Church, d/b/a United Methodist Church Dakotas Area.

6. That at a meeting at the Sheraton Hotel in Bismarck, North Dakota, in 1984, I told Bishop Boulton about the relationship between Bob Paul and Lynn Cheshire.

7. That Bishop Boulton acknowledged the information but indicated to me that I could get myself in a whole lot of trouble spreading rumors like that.

Based on that sparse record, the trial court granted the Conference summary judgment, ruling it had assumed no fiduciary duty to Cheshire.

[¶ 18] On appeal, the appellant bears the burden of showing error. *E.g. Trollwood Village Ltd. Partnership v. Cass Cty. Bd. of Cty. Com'rs*, 557 N.W.2d 732, 736 (N.D.1996). Here, the Conference supported its motion for summary judgment with affidavit evidence that "[n]either the bishop nor the district superintendent have responsibility for direct pastoral care of parishioners in individual congregations [and] [s]uch functions are the responsibility of the local church minister." Cheshire did not refute that statement with competent admissible evidence, and references to the Book of Discipline in briefs filed by counsel are insufficient to raise a factual dispute about the Conference's duty to Cheshire. *See Kemp*, 523 N.W.2d at 408. Summary judgment is proper when a litigant fails to raise a factual dispute about an element essential to that litigant's claim. *Medcenter*, 1997 ND 54, ¶ 7, 561 N.W.2d 634. We hold that this record does not establish Cheshire raised a genuine dispute of material fact about whether the Book of Discipline imposed a fiduciary duty on the Conference to protect Cheshire from Paul's acts.

[¶ 19] We affirm the summary judgment in favor of the Conference.

[¶ 20] VANDE WALLE, C.J., NEUMANN and SANDSTROM, JJ., and ZANE ANDERSON, District Judge, concur.

[¶ 21] ZANE ANDERSON, District Judge, sitting in place of MARING, J., disqualified.