### 1997 ND 237

**William M. BUCKINGHAM, Marion L. Buckingham, Arnold J. Metzger, Levina S. Metzger, Ann M. Alhamrani, Donald L. Hinkle, Lavon F. Hinkle, Gilbert W. Ellwein, Iris G. Ellwein, Maynard F. Sholts, Evelyn V. Sholts, Claudius A. Wold and Florence E. Wold, Plaintiffs and Appellants,**

v.

**WESTON VILLAGE HOMEOWNERS ASSOCIATION, a corporation, Defendant and Appellee.**

Civil No. 970114.

Supreme Court of North Dakota.

Dec. 9, 1997.

---

Ray H. Walton (argued), Bismarck, for plaintiffs and appellants.

James P. Rausch (argued), of Rausch Law Office, Bismarck, for defendant and appellee.

MARING, Acting Chief Justice.

[¶ 1] The plaintiffs, unit owners in the Weston Village condominium development, have appealed from a summary judgment dismissing their action seeking a declaratory judgment prohibiting enforcement of an amendment to the condominium's bylaws. We reverse and remand for further proceedings consistent with this opinion.

[¶ 2] Weston Village is a condominium project located in Bismarck. The Weston Village Homeowners Association [the Association], made up of all unit owners in the project, manages the project. The owners elect a board of directors to oversee day-to-day operations.

[¶ 3] The original units were constructed in 1973. In 1985, seven new units were added in an area on East Brandon Drive. The plaintiffs ["the East Brandon owners"] are the owners of these seven newer units.

[¶ 4] The unit owners own their individual units, and all unit owners own the common areas, including the private streets in the development, as tenants in common in proportion to each unit's interest in the entire project. *See* N.D.C.C. § 47–04.1–06; *Agassiz West Condominium Ass'n v. Solum*, 527 N.W.2d 244, 246 (N.D.1995). The dispute in this case centers upon assessments for street improvements and repairs in the older, original section of Weston Village. At the time the East Brandon owners purchased their units,[1] the bylaws provided:

> Regular assessments must be fixed at a uniform rate for all units. *Special assessments shall be computed* by the Board of Directors against all units *in proportion to the reasonable benefits conferred on each unit* by the maintenance or improvement giving rise to such assessment. Both regular and special assessments may be collected on a monthly basis. [Emphasis added].

[¶ 5] In May 1996 the Board determined that streets in the original section of Weston Village were in need of repair and improvement. The Board called a special meeting of the Association to allow members to vote on two proposals: (1) amendment of the bylaws to provide for uniform assessment of all unit owners for special assessments, and (2) approval of the street project and assessments for the project. The effect of the amendment would require the seven East Brandon

---

1. The Association asserts two of the East Brandon owners actually purchased their units when an earlier version of the bylaws was in effect. We need not resolve that issue on appeal.

owners, who would receive no direct benefit from the street project, to share equally in the $350,000 cost of that project with the owners of the other 78 units. Over the objections of the East Brandon owners, the bylaw amendment and street project were approved at the special meeting by a majority of the unit owners. The amended bylaw provides:

> *Uniform Rate.* Both regular and special assessments must be fixed at a uniform rate for all units, and may be collected on a monthly basis.

[¶ 6] The East Brandon owners brought this action, seeking a declaration that the bylaw amendment is invalid and should not be enforced against them. On cross-motions for summary judgment the district court determined the amended bylaw was valid and dismissed the complaint. The East Brandon owners appealed.

[¶ 7] Summary judgment is a procedural device available for the prompt and expeditious disposition of a case without trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not change the result. *Keator v. Gale,* 1997 ND 46, ¶ 7, 561 N.W.2d 286 (1997); *Pulkrabek v. Sletten,* 557 N.W.2d 225, 226 (N.D.1996). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which may reasonably be drawn from the evidence. *Keator,* 1997 ND 46, ¶ 7, 561 N.W.2d 286 (1997). On appeal, we determine if the information available to the trial court precludes the existence of a genuine issue of material fact and entitles the moving party to judgment as a matter of law. *Id.* at 1997 ND 46 ¶ 7, 561 N.W.2d 286 (1997).

[¶ 8] The dispositive issue on appeal is whether the district court erred in concluding that, as a matter of law, the bylaw amendment was valid and enforceable against the East Brandon owners. Resolution of this issue requires an examination of the limitations, if any, upon the authority of a majority of unit owners to change the assessment scheme in a manner detrimental to the minority. Counsel for the Association suggests that, because the bylaws specifically allow amendment by a majority vote of unit owners in attendance at a meeting of the Association, the majority has virtually unlimited authority to impose its will upon the minority unit owners.

[¶ 9] We have previously held that the actions of a condominium's board of directors will be reviewed under the business-judgment rule, which governs shareholders' derivative actions to review conduct of corporate directors. *Agassiz West,* 527 N.W.2d at 248. Under the business-judgment rule, actions of the condominium's board must be taken in good faith and in furtherance of the legitimate interests of the condominium, and may not involve fraud, self-dealing, unconscionability, or other misconduct. *Id.* We have not, however, previously addressed the review of actions of a condominium association which adversely affect a minority of unit owners.

[¶ 10] Courts in other jurisdictions have concluded that there are limits upon the majority's authority in these circumstances. It has been held that the condominium association has a fiduciary relationship to the unit owners. *Thanasoulis v. Winston Towers 200 Ass'n,* 110 N.J. 650, 542 A.2d 900, 903 (1988). Courts have accordingly adopted a "reasonableness" rule, holding that, although the condominium's governing body has broad authority to regulate the internal affairs of the development, this power is not unlimited, and any rule, regulation, or amendment to the declaration or bylaws must be reasonable. *See, e.g., O'Buck v. Cottonwood Village Condominium Ass'n,* 750 P.2d 813, 817 (Alaska 1988); *Johnson v. Hobson,* 505 A.2d 1313, 1317 (D.C.1986); *Scudder v. Greenbrier C. Condominium Ass'n,* 663 So.2d 1362, 1369 (Fla.Dist.Ct.App.1995); *Ridgely Condominium Ass'n v. Smyrnioudis,* 343 Md. 357, 681 A.2d 494, 498 (1996); *Bluffs of Wildwood Homeowners' Ass'n v. Dinkel,* 96 Ohio App.3d 278, 644 N.E.2d 1100, 1102 (1994). Under the reasonableness test, a rule which is unreasonable, arbitrary, or capricious is invalid. *Worthinglen Condominium Unit*

Owners' Ass'n v. Brown, 57 Ohio App.3d 73, 566 N.E.2d 1275, 1277 (1989).

[¶ 11] In applying the reasonableness test, the reviewing court must determine:

(1) whether the decision or rule is arbitrary,

(2) whether the decision or rule is applied in an even-handed or discriminatory manner, and

(3) whether the decision or rule was made in good faith for the common welfare of the owners and occupants of the condominium.

Bluffs of Wildwood, 644 N.E.2d at 1102. Courts will especially consider whether the majority's action has an unfair or disproportionate impact on only certain unit owners. See Johnson, 505 A.2d at 1318. The reasonableness test

protects against the imposition by a majority of a rule or decision reasonable on its face, in a way that is unreasonable and unfair to the minority because its effect is to isolate and discriminate against the minority. It provides a safeguard against a tyranny of the majority.

Worthinglen, 566 N.E.2d at 1278.

[¶ 12] The underlying rationale for the reasonableness test has been expressed in Note, Judicial Review of Condominium Rulemaking, 94 Harv.L.Rev. 647, 647–648 (1981) (footnotes omitted):

[L]arge numbers of homeowners are now subject to condominium associations' rulemaking power to promulgate restrictions that bind condominium unit owners. Although condominium associations are imbued with quasi-legislative power, they are not subject to the same statutory and constitutional restrictions that burden public governments. Such unconstrained regulatory power poses dangers for condominium owners that warrant closer scrutiny.

One source of danger lies in the substantive reach of condominium rulemaking. Covenants and bylaws may range across an entire landscape of regulation, dictating architectural styles, owner maintenance assessments, the presence on the premises of children or pets, and even the owner's activities within his home. Unless constrained by constitution, statute, or common law, such restrictions are unlimited in subject matter and in the burden they may impose on unit owners; the condominium association's ability to alter the condominium's restrictive scheme thus may result in unforeseeable and burdensome new obligations for individual unit owners. Condominium associations may also ignore elementary notions of equal treatment by formally exempting certain owners from restraints or by unevenly enforcing nominally uniform rules.

[¶ 13] In the specific context of changing the method of assessments, the reasonableness rule may have especially broad application, prohibiting a change in the proportionate share of expenses without the owner's consent. See 15A Am.Jur.2d Condominiums and Co-operative Apartments § 36 (1976) ("proportionate obligation in the share of common expenses cannot be altered without the consent of the owner, absent a specific provision in the declaration to the contrary"). In Thiess v. Island House Ass'n, 311 So.2d 142, 146 (Fla.Dist.Ct.App.1975), the court concluded:

In the final analysis we have a situation where at the time appellants purchased their unit the Declaration of Condominium specified that they would become the owner of one-seventy third of the common elements and would be obligated for one-seventy third of the common expenses. In absence of a statement in the declaration that an owner's condominium parcel could be changed without his consent, the appellants had a right to rely on the fact that their proportionate obligation to share in the common expenses could not be altered unless they agreed to it. Since § 711.15 provides that the Association may have a lien on each condominium parcel for any unpaid assessments, any other interpretation would place the minority of condominium owners at the mercy of the majority. The sharing of common expenses based upon a proportion of each unit's value may be advisable, but the original declaration specified otherwise. In this instance most of the money went to the upkeep of the apartments, but the next time it may be the villas which will need the repairs. Ap-

pellants did not join in the execution of the amendment; therefore, they may not be charged more than the share of common expenses allocated to them in the original declaration.

[¶ 14] The facts in this case demonstrate the need for limitations on the majority's authority to change the method of assessments. We adopt the "reasonableness" test and conclude the power of a condominium's governing body to make rules, regulations or amendments to the declaration or bylaws is limited by a determination of whether the action is unreasonable, arbitrary, capricious, or discriminatory.

[¶ 15] The East Brandon owners purchased their units with the expectation they would be assessed for special projects based upon the proportionate benefit to their individual units. However, when a $350,000 street repair project in the original development was proposed, the majority amended the bylaws to require uniform assessment, including the East Brandon owners, for the project. At oral argument, counsel for the Association candidly conceded that, under the Association's legal theory, there would be nothing to prevent the Association from changing the bylaws back to benefit-based assessments if the next contemplated project would benefit only the East Brandon minority.

[¶ 16] We reverse the summary judgment dismissing the complaint and remand to the trial court for consideration of the validity of the amendment to the bylaws under the "reasonableness" test set forth in this opinion, and for further proceedings as may be necessary.

[¶ 17] NEUMANN, SANDSTROM and MESCHKE, JJ., and GERALD G. GLASER, Surrogate Judge, concur.

[¶ 18] GERALD G. GLASER, Surrogate Judge, sitting in place of VANDE WALLE, C.J., disqualified.