2017 ND 77

**Chace Cody STEWART, Petitioner and Appellant**

v.

**STATE of North Dakota, Respondent and Appellee**

**No. 20160253**

Supreme Court of North Dakota.

Filed 03/30/2017

Scott O. Diamond, 3523 45th Street South, Suite 100, Fargo, N.D. 58104, for petitioner and appellant; submitted on brief.

Barbara L. Whelan, State's Attorney, 600 Cooper Avenue, Third Floor, Grafton, N.D. 58237, for respondent and appellee; submitted on brief.

VandeWalle, Chief Justice.

[¶ 1] Chace Stewart appealed from an order summarily denying his application for post-conviction relief. We conclude Stewart failed to raise a genuine issue of material fact that his counsel's representa-

tion fell below an objective standard of reasonableness. We affirm.

## I

[¶ 2] In August 2013, the State charged Stewart with two counts of aggravated assault for alleged assaults against his mother and step-father. In December 2013, in conjunction with the two pending charges of aggravated assault, two petitions to revoke probation for earlier aggravated assault convictions, and pending charges for disorderly conduct and for driving under the influence, Stewart, with counsel, entered into a written plea agreement with the State to resolve all the cases against him. In the written plea agreement, Stewart admitted the allegations in the two petitions to revoke his probation, the pending disorderly conduct charge, and the two pending aggravated assault charges. After a hearing, the district court accepted the plea agreement and sentenced Stewart under the agreement.

[¶ 3] In May 2015, Stewart filed a self-represented application for post-conviction relief, claiming his guilty plea to the aggravated assault charges against his mother and step-father was not voluntary and he was denied effective assistance of counsel. Stewart claimed his counsel "did not do what [Stewart] had submitted to him in writing," and his guilty plea was "unlawfully induced or not made voluntarily with understanding" because there was an "[a]bsence of [his] right to a psychological evaluation." Stewart's application sought withdrawal of his guilty plea.

[¶ 4] The State moved to dismiss Stewart's application under N.D.C.C. § 29-32.1-06, claiming he was not entitled to post-conviction relief. The State argued Stewart's application and the record of the plea acceptance hearing failed to meet established standards for a claim for ineffective assistance of counsel.

[¶ 5] Stewart, through counsel, supplemented his application with written reports from a clinical psychologist and a pharmacist. The clinical psychologist's report stated Stewart did not meet the criteria for lack of criminal responsibility but his criminal responsibility may have been diminished based on his history of prescription use of Ambien. The psychologist's report recommended consultation with a pharmacist for information pertaining to the impact of side effects of Ambien. A pharmacist's written report opined that based on Stewart's medical history surrounding the incident "there seems to be a number of factors that could potentially influence the role of the [Ambien] and its potential to have caused the amnesia surrounding the incident." Stewart's supplement to his application claimed ineffective assistance of counsel because counsel failed to seek a mental health evaluation of Stewart to determine if a mental defect existed at the time of the aggravated assaults that would have allowed Stewart to claim a defense of lack of criminal responsibility or provide mitigating factors. Stewart claimed that based on the reports by the psychologist and pharmacist, he had a legitimate defense of lack of responsibility or of mitigating factors that could have been raised at trial but was not explored.

[¶ 6] The district court summarily denied Stewart's application for post-conviction relief. The court ruled Stewart failed to come forward with sufficient evidence to establish a genuine issue of material fact that withdrawal of the guilty plea was necessary to correct a manifest injustice. The court said there was no sworn affidavit from Stewart or any other individual to support his assertion that he was experiencing mental health issues and the side effects of medication when he committed the offenses against his mother and step-father, that he should have been evaluated

for those issues, or even what medication, if any, he was taking at that time. The court said it was not adequate to merely assert those claims without competent evidence by affidavit. The court explained no competent evidence supported the underlying factual statements in the reports by the clinical psychologist and the pharmacist relating to Stewart at the time of the offenses. The court also said Stewart failed to satisfy the evidentiary threshold for the second prong of a claim for ineffective assistance of counsel because he failed to show he was prejudiced by counsel's claimed deficient performance. The court said there was no evidence to establish Stewart was suffering from mental health issues at the time of the aggravated assault offenses and as a matter of law he would not be able to show how any alleged failure to obtain a mental health evaluation or present evidence of any alleged prescription drug use would have relieved him of, or mitigated, his criminal responsibility. The court said Stewart failed to provide competent evidence to show there would have been a different result regarding his culpability.

II

[¶ 7] Stewart argues the district court should have granted him an evidentiary hearing on his claim for ineffective assistance of counsel. He claims his counsel's performance fell below an objective standard of reasonableness because counsel failed to have Stewart evaluated for his mental health issues and possible side effects of his medication. Stewart asserts he submitted sufficient evidence to warrant an evidentiary hearing on his claim for ineffective assistance of counsel.

[¶ 8] Under N.D.C.C. § 29–32.1–09, a party may move for summary disposition in post-conviction relief proceedings if the application, pleadings, previous proceedings, discovery, or other matters in the record show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We review an appeal from a district court's summary dismissal of a post-conviction relief application in the same manner as an appeal from summary judgment. Coppage v. State, 2011 ND 227, ¶ 8, 807 N.W.2d 585; Henke v. State, 2009 ND 117, ¶ 9, 767 N.W.2d 881. "The party opposing the motion is entitled to all reasonable inferences at the preliminary stages of a post-conviction proceeding and is entitled to an evidentiary hearing if a reasonable inference raises a genuine issue of material fact." Coppage, at ¶ 8. When the State moves for summary dismissal, the burden shifts to the applicant to support the application with evidence that raises a genuine issue of material fact:

A petitioner is not required to provide evidentiary support for his petition until he has been given notice he is being put on his proof. At that point, the petitioner may not merely rely on the pleadings or on unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact. If the petitioner presents competent evidence, he is then entitled to an evidentiary hearing to fully present that evidence.

Coppage, at ¶ 9 (quoting Henke, at ¶ 11). The district court, however, may summarily dismiss a post-conviction relief application when the State establishes there are no genuine issues of material fact. Coppage, at ¶ 9; Henke, at ¶ 12.

[¶ 9] Stewart's application for post-conviction relief alleged claims for ineffective assistance of counsel. In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established the test

for whether a convicted criminal defendant's ineffective assistance of counsel claim warrants a reversal of a conviction. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, the defendant must show that the deficient performance prejudiced his or her defense. Id. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

[¶ 10] This Court has stated that the counsel's effectiveness is measured by an objective standard of reasonableness considering prevailing professional norms. DeCoteau v. State, 2000 ND 44, ¶ 8, 608 N.W.2d 240. We have also explained:

> Establishing both elements is a heavy burden and requires a defendant to both overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This requires the defendant to demonstrate with specificity how and where trial counsel was incompetent, and it is probable a different result would have been obtained had trial counsel not performed incompetently.

Klose v. State, 2005 ND 192, ¶ 9, 705 N.W.2d 809 (citations omitted). In reviewing trial counsel's conduct in an ineffective assistance of counsel claim, we are cognizant of limiting the distorting effect of hindsight. Garcia v. State, 2004 ND 81, ¶ 5, 678 N.W.2d 568. Whether there has been ineffective assistance of counsel is a mixed question of law and fact that is fully re-

viewable by this Court. Gaede v. State, 2011 ND 162, ¶ 5, 801 N.W.2d 707.

[¶ 11] The two-part Strickland test "'applies to challenges to guilty pleas based on ineffective assistance of counsel.'" Lindsey v. State, 2014 ND 174, ¶ 19, 852 N.W.2d 383 (quoting Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). The first prong is satisfied if a defendant proves counsel's conduct consisted of errors serious enough to result in denial of the counsel guaranteed by the Sixth Amendment. Lindsey, at ¶ 19. The second prong is satisfied in the context of a guilty plea if the defendant shows "'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" Ernst v. State, 2004 ND 152, ¶ 10, 683 N.W.2d 891 (quoting Hill, 474 U.S. at 59, 106 S.Ct. 366).

[¶ 12] In Lindsey, 2014 ND 174, ¶¶ 16–17, 852 N.W.2d 383, we also explained:

> Generally, when a post-conviction relief applicant seeks to withdraw a guilty plea, the district court looks to whether relief is necessary to correct a "manifest injustice." See Moore v. State, 2013 ND 214, ¶ 10, 839 N.W.2d 834. "'When a defendant applies for post-conviction relief seeking to withdraw a guilty plea, we ... treat the application as one made under N.D.R.Crim.P. [11](d).'" Moore, at ¶ 10 (quoting Greywind v. State, 2004 ND 213, ¶ 7, 689 N.W.2d 390). "Withdrawal is allowed when necessary to correct a manifest injustice." Moore, at ¶ 10. "Before accepting a plea of guilty, the court must ... determine that the plea is voluntary and did not result from force, threats, or promises other than promises in a plea agreement." N.D.R.Crim.P. 11(b)(2). "Waivers of constitutional rights, such as guilty pleas,

must be done freely and voluntarily." Moore, at ¶ 11.

When a defendant pleads guilty on the advice of counsel, the defendant " 'may only attack the voluntary and intelligent character of the guilty plea.' " Damron v. State, 2003 ND 102, ¶ 9, 663 N.W.2d 650 (quoting Tollett v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)). Unless a defendant can prove "serious derelictions" on the part of the defendant's attorney that kept a plea from being knowingly and intelligently made, the defendant will be bound by that guilty plea. Damron, at ¶ 13 (citing McMann v. Richardson, 397 U.S. 759, 774, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). "In criminal cases, the defendant has the burden to present evidence to overcome the presumption that defense counsel is competent and adequate, and to do so, the defendant must point 'to specific errors made by trial counsel.' " Damron, at ¶ 13 (quoting State v. Slapnicka, 376 N.W.2d 33, 36 (N.D. 1985)).

[¶ 13] Here, in accepting Stewart's guilty plea, the district court entered into an extended colloquy with Stewart:

THE COURT: ... Okay, Mr. Stewart, I am going to ask you a lot of questions here, this afternoon. Before I do that, I need to appreciate that you are in the appropriate state of mind to appreciate everything, so some standard questions for you.

Are you currently under the influence of any intoxicating liquor or drugs?

MR. STEWART: No, I am not.

THE COURT: Have you ingested any medication or taken anything else that would cause you to be confused or not to understand what is happening here today?

MR. STEWART: No, Your Honor.

THE COURT: Do you have any mental or physical disability that would prevent you from understanding what is happening here today?

MR. STEWART: No, Your Honor.

THE COURT: Okay. With that, we will go forward. At the last hearing several days ago, there was a continuance to allow you to have a chance to review a proposed plea agreement, and I presume you have had that chance, but we will get into that here in a few moments. I do note that on page 4 of the document entitled "Plea Agreement," it has your signature. In fact, is that your signature?

MR. STEWART: Yes, it is, Your Honor.

THE COURT: And you signed that today?

MR. STEWART: Yes, I did.

THE COURT: Before signing it, did you have a chance to read and review the document?

MR. STEWART: Yes, I did, Your Honor.

THE COURT: How much education do you have?

MR. STEWART: I have a GED.

THE COURT: So you can read and write?

MR. STEWART: Yes, I can, Your Honor.

THE COURT: And before you signed it, did you have a chance to review all of the terms of it with your attorney?

MR. STEWART: Yes, I did.

THE COURT: Are you satisfied you have been—you have had enough time to do that?

MR. STEWART: Yes, I am, Your Honor.

THE COURT: Okay. And are you satisfied that ... your attorney, has

been able to answer any questions you may have had regarding the terms of the agreement?

MR. STEWART: He answered all of them, yeah.

THE COURT: Do you understand all of the terms of it?

MR. STEWART: Yes, I do, Your Honor.

THE COURT: Okay. In signing it, did you sign it of your own free will?

MR. STEWART: I did.

THE COURT: Even with those representations, I want to go through it with you.

You are currently charged—first of all, there are two petitions to revoke your probation on felonies. You are also charged with a pending matter of disorderly conduct, a B misdemeanor; driving under the influence, a second offense, a B misdemeanor; and two new counts of aggravated assault, each of them class C felonies.

It is represented that the following would happen regarding all of these cases.

First of all, in the two petitions to revoke probation, it is indicated you would admit to the allegations contained in the petition; that two and one-half years of incarceration still remaining suspended would be revoked and imposed against you. You would be given credit for time spent in custody of 136 days through today's date; and any fees that would be assessed previously would be reduced to civil judgment; and that these two sentences would run concurrent with each other. In other words, you wouldn't serve 2.5 years plus another 2.5 years. You would serve in terms of incarceration a total of two and one-half years, less credit for time served of 136 days. So do you understand all of that?

MR. STEWART: Yes, I do, Your Honor.

THE COURT: Then it goes on to say that for a charge of disorderly conduct, there would be imposed against you 30 days, with the assessment of the statutory fees, including the attorney application fee and your attorney's hours, and payment of these fees would be a condition of your probation in the remaining cases. Then it goes on to say that the DUI charge against you would be dismissed. Understand what would happen in those two pending cases?

MR. STEWART: Yes, I do, Your Honor.

THE COURT: And finally in your charges, and there are two of them, in Case Number 50–2013–CR–345, this is what would happen: You would be sentenced to serve on each of those two convictions for aggravated assault, five years with the North Dakota Department of Corrections. But after serving three years on that, the balance of two years would be suspended for a duration of two years of supervised probation.

It is also indicated by the terms of the plea agreement that, although these two sentences would be concurrent to each other, they would run consecutive to the disposition on the revocation dispositions. That means that you would be serving a total of 5.5 years of incarceration before you are eligible for probation. So do you understand that?

MR. STEWART: Yes, I do, Your Honor.

. . . .

THE COURT: Okay. So again, having explained to you what the terms would be for disposition under the plea agreement and your probation terms that would be incorporated as part of that, again, do you understand everything?

MR. STEWART: Yes, I do.

THE COURT: And understanding them, do you accept all of these terms of disposition on these matters?

MR. STEWART: I do, Your Honor.

THE COURT: Do you do that of your own free will?

MR. STEWART: Yes, I do, Your Honor.

THE COURT: Anyone threaten or coerce you into agreeing to it?

MR. STEWART: No, Your Honor.

. . . .

THE COURT: ... We will proceed now with the matter of changes of plea on the other cases. Again, previously I explained these pending charges to you of disorderly conduct and the two counts of aggravated assault, along with the accompanying penalties. Do I need to review any of that with you again today?

MR. STEWART: No, Your Honor.

THE COURT: Also previously on these pending charges, I explained to you all of your rights. Do I need to review any of that with you again today?

MR. STEWART: No, Your Honor.

. . . .

THE COURT: To the charge whereby it is claimed that on or about August 21, 2013, you did within Walsh County commit the offense of ... aggravated assault ..., how do you plead, not guilty or guilty?

MR. STEWART: Guilty.

THE COURT: And to the charge under Amended Count Two, whereby it is claimed that on or about August 21, 2013, in Walsh County, you committed the offense of aggravated assault ..., how do you plead to that, not guilty or guilty?

MR. STEWART: Guilty.

THE COURT: Has anybody threatened or coerced you into pleading guilty ...?

MR. STEWART: No, Your Honor.

THE COURT: Other than this plea agreement, has anybody, including the prosecutor's office or your probation officer, promised you anything else to encourage you to plead guilty?

MR. STEWART: No, Your Honor.

THE COURT: Do you understand the nature of the charges and the penalties that would be imposed by the terms of the plea agreement?

MR. STEWART: I do.

THE COURT: Understand you had a right to maintain a not guilty plea instead?

MR. STEWART: Yes, I do.

THE COURT: And do you understand that by now changing your pleas to guilty, you give up your right to trial, including one by jury; you give up your right to be confronted by witnesses against you; and you give up your right to remain silent?

MR. STEWART: I do.

[¶ 14] The record reflects the district court complied with N.D.R.Crim.P. 11 in accepting Stewart's guilty pleas and Stewart does not contend the court did not satisfy those requirements. During the court's colloquy with Stewart, Stewart indicated he was satisfied that his counsel was able to answer any questions Stewart had regarding the terms of the plea agreement. The court's exchange with Stewart reflects Stewart entered the guilty plea knowingly and intelligently. See Lindsey, 2014 ND 174, ¶ 17, 852 N.W.2d 383.

[¶ 15] Stewart has not cited any affidavits or other comparable evidence to establish a factual basis for his claims about lack of criminal responsibility or deficiencies of counsel. Stewart's statements in his

attorney's supplement to the application and his appellate brief that Stewart, his mother, and step-father would testify they told his attorney multiple times that he was suffering from mental health issues and should be evaluated are insufficient to raise a disputed issue of material fact. See L.C. v. R.P., 1997 ND 96, ¶ 6, 563 N.W.2d 799 (factual assertions in legal brief are insufficient to raise issue of material fact). Stewart's statements and allegations about ineffective assistance of counsel in his initial self-represented application for post-conviction relief are also conclusory allegations about ineffectiveness of counsel without any underlying factual support. Id. (litigant resisting summary judgment may not merely reassert allegations in pleadings to defeat summary judgment motion; rather, litigant must present competent evidence by affidavit or other means to raise issue of material fact). The written reports by the clinical psychologist and the pharmacist are not sworn statements and do not raise a permissible inference that Stewart lacked criminal responsibility at the time of the assaults, or that he may have suffered from diminished responsibility. See Stewart v. Ryan, 520 N.W.2d 39, 44 (N.D. 1994) (unsworn statements are insufficient to raise disputed issue of material fact).

[¶ 16] Stewart provided no affidavits or other comparable evidence to satisfy his burden of presenting competent admissible evidence to raise an issue of material fact on his claim of ineffective assistance of counsel. Based on our review of the record in the context of Stewart's guilty plea, we conclude he failed to raise a genuine issue of material fact showing his counsel's representation fell below an objective standard of reasonableness. We therefore conclude that summary disposition was appropriate on Stewart's claim for ineffective assistance of counsel.

III

[¶ 17] We affirm the order summarily denying Stewart's application for post-conviction relief.

[¶ 18] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom, S.J.

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

[¶ 19] The Honorable Jerod E. Tufte was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Dale V. Sandstrom, sitting.