1997 ND 55

**Jeffrey Eugene LOVIN, Plaintiff and Appellant,**

**v.**

**Nicole Bergit LOVIN, n/k/a Nicole Bergit Borchert, Defendant and Appellee.**

**Civil No. 960189.**

Supreme Court of North Dakota.

April 1, 1997.

Alan J. Larivee (argued), of Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for plaintiff and appellant.

Patti J. Jensen (argued), of Lindquist & Jeffrey, East Grand Forks, for defendant and appellee.

MARING, Justice.

[¶ 1] Jeffrey Eugene Lovin appeals from an amended judgment awarding Nicole Bergit Borchert primary physical custody of the couple's son, Jaeden. We hold the trial court used the wrong legal standard when it decided Jaeden's custodial placement in the context of a motion for new trial instead of a motion to modify a previous custody award. We reverse and remand for further proceedings.

[¶ 2] Jeffrey and Nicole met and began dating in 1990 while both worked at a Grand Forks restaurant. Jeffrey was 23 and Nicole was 20 at the time. They eventually began living together and Jaeden was born November 14, 1992, about one month after the couple married. There was considerable conflict in the relationship, and in May 1993, Nicole and Jaeden moved into her mother's home.

[¶ 3] Jeffrey brought this divorce action in June 1993 and obtained an ex parte interim order granting him temporary physical custody of Jaeden, subject to Nicole's liberal visitation rights. As contemplated by the interim order, however, Jeffrey and Nicole essentially shared Jaeden's physical custody on an equal basis, alternating custody every four days. In December 1993, the court granted Nicole's motion for court-supervised mediation and the parties resolved all divorce issues except Jaeden's custody. A trial on that issue was held in February 1995.

[¶ 4] In August 1995, the trial court issued its decision. The court noted both parents "acknowledge that they have acted immaturely in the past." Both had been convicted of driving under the influence of alcohol. The court noted Jeffrey "has dropped out of college several times, while Nicole has been successfully going to the Northwest Technical College to get her LPN degree." Nicole had been living with her mother while attending college and worked part time at a bar. Jeffrey had not been working outside his home, but had been staying there with Jaeden and had applied for and received AFDC benefits. Jeffrey was also attending some classes at the University of North Dakota while his parents helped care for Jaeden.

[¶ 5] Applying the best interest factors under N.D.C.C. § 14–09–06.2, the court found Jeffrey had been the "primary care-taker" of Jaeden "at least since the signing of the Interim Order," "has taken the step to make sure that Jaeden got medical coverage through social services," "has shown more of a disposition to provide better and more consistent care for Jaeden," and "has provided a more stable environment" for the child. The court awarded the parties joint legal custody of Jaeden, with primary physical custody given to Jeffrey. Nicole was given "liberal and reasonable visitation rights to be agreed upon by the parties." Judgment was entered on September 1, 1995.

[¶ 6] On September 14, 1995, Nicole moved for a new trial under N.D.R.Civ.P. 59, alleging there was:

Newly discovered evidence material to the Defendant which could not have been, with reasonable diligence, produced at trial as follows:

a. An Order has now been entered by the North Dakota Department of Human Services denying Jeff Lovin's entitlement to welfare benefits.

b. An Affidavit of Probable Cause has been filed by the Public Assistance Fraud Investigator stating Jeff Lovin falsely reported information on his application for assistance.

c. Jeff Lovin has been charged, following a June 10, 1995 arrest, with gross DUI in Polk County, Minnesota.

[¶ 7] In granting Nicole's motion, the trial court noted the Minnesota driving-under-the-influence charge and the investigation and termination of Jeffrey's social service benefits occurred after trial but before entry of judgment, placing "the parties in an awkward position. . . ." The court found:

the circumstances indicated above do meet the criteria of Rule 59((b))(4) as "newly discovered evidence material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial."

Ms. Jensen indicated that her discovery of the new DUI charge was merely by

happenstance because she was at the Crookston courthouse. The Court can take judicial notice that DUI charges are not published until after a conviction.

The issue of so-called welfare fraud was raised during the trial but there was no decision made by social services concerning benefits. Now that that issue is at least partially resolved, the Court feels that recent developments in that case may also constitute "newly discovered evidence" under Rule 59.

[¶ 8] The court ordered a further hearing "limited to those [issues] related to newly discovered evidence concerning any additional DUI charge and actions of social services post-trial." The court said "the additional evidence which may be produced at an additional hearing will be balanced with that already produced and the current situation of the parties."

[¶ 9] Additional hearings, described by the court as "a reopening of the evidence for a limited purpose," were held on March 6 and April 17, 1996. On March 6, Jeffrey, Nicole, a welfare fraud investigator for Grand Forks County Social Services, and the Minnesota State Patrol trooper who arrested Jeffrey for driving under the influence in June 1995, testified. Jeffrey invoked his Fifth Amendment privilege against self-incrimination to some questions about the termination of his AFDC benefits and the Minnesota driving-under-the-influence charge, which had not yet been tried. The welfare fraud investigator testified he believed Jeffrey was not truthful when applying for AFDC benefits, which resulted in his filing an affidavit of probable cause with the office of the Grand Forks County State's Attorney. The Minnesota State Trooper testified about Jeffrey's arrest for driving under the influence.

[¶ 10] At the close of the testimony, Jeffrey's counsel requested a continuance until Jeffrey's Minnesota criminal case was completed. Jeffrey's counsel told the court the case had been scheduled for trial on April 9, 1996. The court continued the hearing until after that date. When the trial court reconvened the hearing on April 17, 1996, Jeffrey's Minnesota criminal charge was still unresolved, because Jeffrey had requested and been granted a continuance by the Minnesota court. The trial court heard further testimony from Nicole and closing arguments by counsel. No evidence was presented that Jeffrey had been formally charged with welfare fraud.

[¶ 11] On May 7, 1996, the trial court issued its "memorandum decision after order partially granting motion for new trial." The court cited the details of Jeffrey's Minnesota arrest for driving under the influence. The court also recounted the testimony of the welfare fraud investigator and the updated status of the parties. After noting its original August 1995 custody decision "was a very close case," the court awarded Nicole physical custody of Jaeden subject to Jeffrey's "liberal visitation rights," and ordered Jeffrey to pay $330 per month child support. The court reasoned:

> After considering the additional testimony, this Court concludes that it was erroneous in concluding that Jeffrey was the more stable parent able to provide Jaeden with better and more consistent care.
>
> Jeffrey's additional action of getting a second DWI within a year of his conviction of the first one shows a serious lack of maturity. Besides the obvious danger to himself and others by driving intoxicated, he now faces possible criminal penalties of a significant fine, loss of driver's license, incarceration, and a substantial increase in insurance. This [a]ffects Jeffrey, but it also has an impact upon Jaeden.
>
> Jeffrey's nondisclosure of the joint custody situation to Social Services in his AFDC application along with his prior indication that he did not know Nicole's residence bring into question Jeffrey's truthfulness.
>
> The additional evidence heightens this Court's concerns about Jeffrey's maturity and judgment.

An amended judgment was entered, and Jeffrey appealed.

[¶ 12] Jeffrey contends the trial court applied the wrong procedure and standard in deciding Nicole's motion. He asserts the court should have treated Nicole's motion for a new trial as a motion for change of custody

and applied the significant-change-of-circumstances standard, rather than focusing on newly discovered evidence, and then reapplying the best interest factors for an original custodial placement. We agree.

[¶ 13] Although this court has described a motion to modify custody as "akin to a request for a new trial based upon newly discovered evidence that could not have been discovered and produced at trial," *Alvarez v. Carlson*, 524 N.W.2d 584, 589 (N.D.1994), *see also Schmidt v. Reamann*, 523 N.W.2d 70, 72 (N.D.1994), we have on several occasions said a motion for new trial based on newly discovered evidence in custody cases is inappropriate because the court has continuing jurisdiction to modify custody when new evidence is adduced. *See Weber v. Weber*, 512 N.W.2d 723, 728 (N.D.1994); *Johnson v. Schlotman*, 502 N.W.2d 831, 836 (N.D.1993); *Porter v. Porter*, 274 N.W.2d 235, 242–243 (N.D.1979). If our prior admonitions left the impression a motion to modify custody is merely a preference over a motion for new trial based on newly discovered evidence, and either procedure is appropriate, we clarify that fundamental differences between the two procedures mandate use of the modification procedure after entry of the judgment making the original custodial placement.

[¶ 14] The purpose of a motion for new trial under N.D.R.Civ.P. 59 is to give the trial court an opportunity to correct errors without subjecting the parties and appellate courts to the time and expense involved in an appeal. *See Wenzel v. Wenzel*, 469 N.W.2d 156, 158 (N.D.1991). Applicable to civil proceedings in general, the rule is not tailored to meet circumstances unique to custodial placement. Thus, unlike a child custody modification proceeding, the movant for a new trial based on newly discovered evidence must establish peripheral elements such as due diligence in discovering the allegedly new evidence. *See Keyes v. Amundson*, 391 N.W.2d 602, 605 (N.D.1986). On appeal from an order granting or denying a motion for new trial based on newly discovered evidence, we apply the extremely deferential abuse-of-discretion standard of review, *see McAdoo v. McAdoo*, 492 N.W.2d 66, 69 (N.D.

1992), and reverse only if the trial court "acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process." *Endresen v. Beretta USA Corp.*, 1997 ND 38, ¶ 14, 560 N.W.2d 225.

[¶ 15] Having concluded Nicole overcame this initial hurdle, the trial court heard additional evidence and merely engaged in a reassessment of the best interests and welfare of the child. *See* N.D.C.C. §§ 14–09–06.1 and 06.2. Finding only "it was erroneous in concluding that Jeffrey was the more stable parent able to provide Jaeden with better and more consistent care," the trial court simply switched physical custody from Jeffrey to Nicole. The trial court's analysis ignores custodial stability and continuity, which are primary concerns in modification proceedings.

[¶ 16] Unlike an initial custody determination in which the trial court considers only the best interests and welfare of the child, a motion to modify custody requires a two-step analysis. *See Frafjord v. Ell*, 1997 ND 16, ¶ 7, 558 N.W.2d 848; *Anderson v. Hensrud*, 548 N.W.2d 410, 412 (N.D.1996); *Van Dyke v. Van Dyke*, 538 N.W.2d 197, 201 (N.D.1995). In *McDonough v. Murphy*, 539 N.W.2d 313, 316 (N.D.1995), we explained:

The court must first determine whether there has been a significant change in circumstances since the original placement. *Klose v. Klose*, 524 N.W.2d 94, 95 (N.D. 1994). If there has, the court must further determine whether that change compels, in the child's best interests, a change of custody. *Barstad v. Barstad*, 499 N.W.2d 584, 587 (N.D.1993). The parent seeking to modify custody has the burden of showing both that a circumstance changed significantly and that this change so adversely affected the child that a custodial change is required. *Gould v. Miller*, 488 N.W.2d 42, 43 (N.D.1992). Changed circumstances must be new facts that were unknown at the time of the prior custodial decree. *Leppert v. Leppert*, 519 N.W.2d 287, 292 (N.D.1994). As we explained in *Alvarez v. Carlson*, 524 N.W.2d 584, 589–590 (N.D. 1994), there is a doctrinal aversion to changing the custody of a happy child who

has been living with one parent for a substantial time, and thus close calls should be resolved in favor of continuing an existing custodial placement.

[¶ 17] Because of the importance accorded custodial stability and continuity, courts in a modification proceeding must weigh the statutory best-interest factors against the backdrop of the stability of the child's relationship with the custodial parent. *See Barstad v. Barstad,* 499 N.W.2d 584, 587 (N.D.1993). Indeed, we have pointed out that "[m]aintaining stability and continuity in the child's life, without harm to the child, is the most compelling factor when considering a motion for change of custody." *Alvarez,* 524 N.W.2d at 589. As we explained in *Hagel v. Hagel,* 512 N.W.2d 465, 467 (N.D. 1994) (quoting *Orke v. Olson,* 411 N.W.2d 97, 100 (N.D.1987)), the added requirement of showing a change of custody is "compelled" or "required" "gives some finality to a trial court's original custody decision and helps ensure that a child is not bounced back and forth between parents 'as the scales settle slightly toward first one parent and then the other.'"

[¶ 18] We have described the burden facing a noncustodial parent seeking a change of custody as " 'a daunting, arduous task.'" *Alvarez,* 524 N.W.2d at 590 (quoting *Johnson,* 502 N.W.2d at 837 (Levine, J., concurring)). The heavy burden has a "deterrent effect on continuous litigation of custody which, left unchecked, generates cruel emotional and economic strain on all participants to the ultimate detriment of a child's best interests." *Blotske v. Leidholm,* 487 N.W.2d 607, 609 (N.D.1992). Our standard of review even differs. In an appeal from a modification proceeding, we apply the clearly erroneous standard of review under N.D.R.Civ.P. 52(a), rather than the abuse of discretion standard. *See, e.g., Guskjolen v. Guskjolen,* 391 N.W.2d 639, 642 (N.D.1986).

[¶ 19] The burden facing a noncustodial parent seeking a change of custody is more onerous than the burden placed on a noncustodial parent who seeks the same result through a motion for new trial based on newly discovered evidence. Allowing a noncustodial parent to change child custody with a procedure that does not require a showing of a significant change of circumstances compelling the modification would defeat the importance we have accorded custodial stability and continuity.

[¶ 20] Nicole argues she met her burden of justifying the change of custody under the heightened standards for modification, even though the trial court did not treat her motion as one to modify custody. On this record, we will not assume the trial court would have reached the same result if it had treated her motion as requesting a change of custody. The trial court's ruling in no way resembles a decision in a modification proceeding. There is no mention of a significant change of circumstances requiring a change of custody. Recent custodial stability or instability is not addressed. We decline to equate the trial court's "heighten[ed] ... concerns about Jeffrey's maturity and judgment" revealed by the additional evidence with a finding there has been a significant change of circumstances requiring a change of Jaeden's custody.

[¶ 21] In this case, Nicole's N.D.R.Civ.P. 59 motion was made after entry of the divorce judgment. The trial court erred in simply finding sufficient grounds to grant a limited new trial on the basis of newly discovered evidence, considering that evidence in reevaluating the original custodial placement, and then effectively changing custody from the custodial to noncustodial parent. We reverse the amended judgment and remand for the trial court to apply the correct legal standard in deciding Nicole's request for Jaeden's physical custody.

[¶ 22] Nicole requests that we award her costs and attorney fees for this appeal under N.D.C.C. § 14–05–23 and remand to the trial court to determine the appropriate amount. We decline her request. Here, the trial court in the proceedings below ordered "[e]ach party shall be responsible for his or her own costs and attorney's fees." Nicole does not challenge that order on appeal. This marriage was of short duration and the divorce judgment basically awarded the parties the property each brought into the marriage. No spousal support was awarded.

There is no obvious disparity in the property division or the parties' earning capacities to persuade us to award Nicole costs and attorney fees for this appeal.

[¶ 23] The trial court is in a better position to assess factors relevant to an award of costs and attorney fees under N.D.C.C. § 14–05–23. *See Hendrickson v. Hendrickson*, 553 N.W.2d 215, 220 (N.D.1996). On remand, Nicole is free to make her request to the trial court.

[¶ 24] We reverse the amended judgment and remand for further proceedings.

[¶ 25] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.