1999 ND 43

**DeLoras WOODWORTH, Plaintiff and Appellee,**

v.

**Geri CHILLEMI, and Main Realty, Inc. dba Main & Company Realtors, Defendants and Appellants.**

**Civil No. 980190**

Supreme Court of North Dakota.

March 18, 1999.

DeLoras Woodworth, pro se, Bismarck, ND. Submitted on brief.

Timothy J. Wahlin, of Kelsch, Kelsch, Ruff & Kranda, Mandan, ND, for defendants and appellants. Submitted on brief.

KAPSNER, Justice.

[¶ 1] Geri Chillemi and Main Realty, Inc., doing business as Main & Company Realtors (Main), appealed from a judgment awarding DeLoras Woodworth $1,651.53 plus interest, and from an order denying Chillemi and Main's motion for clarification. We conclude the trial court abused its discretion in refusing to clarify the judgment, and we reverse and remand for the trial court to do so or apply the correct formula in determining the amount of damages owed to Woodworth.

[¶ 2] Woodworth sold real estate as an independent contractor for Main from June 1990 until November 1996. Main's sales agents operated under either a 70%/30% commission agreement or a 100% commission agreement. Under a 70%/30% agreement, the agent received 70% of sales commissions and Main received 30%, with the agent paying no monthly rental fees or expenses to Main for use of its offices and support personnel. Under a 100% agreement, the agent received 100% of commissions generated, but paid monthly rental fees and expenses to Main. Under the 100% agreement, if a sales agent failed to timely pay rents and expenses to Main, the contract would automatically change to a 50%/50% commission agreement, with Main and the agent each receiving 50% of the sales commissions.

[¶ 3] Woodworth began working with Main in 1990 under a 70%/30% commission agreement. In November 1992, Woodworth opted for a 100% agreement, which she continued working under until she left Main on November 15 or 16, 1996. In the meantime, Woodworth had filed for bankruptcy on August 13, 1996, and she received her discharge from the bankruptcy court on November 14, 1996. Woodworth had failed to pay the monthly rent and expenses required by the 100% commission agreement from several months before she filed for bankruptcy to the end of her employment with Main. On December 20, 1996, Woodworth also failed to attend the closing of a real estate sale she had arranged while employed by Main. Chillemi, an owner of Main, closed that sale.

[¶ 4] In December 1996, Woodworth sued Chillemi in small claims court seeking $3,373.56 in withheld commissions. Chillemi had the case removed to district court, where Main was added as a defendant. Chillemi and Main moved for summary judgment dismissal of Woodworth's action or, in the alternative, for leave to amend the answer to assert a counterclaim for past due rents. They argued that, as a matter of law under Woodworth's contract with Main, the 100% commission agreement Woodworth was operating under changed to a 50%/50% agreement after Woodworth failed to pay Main monthly rent and expenses when they became due. Woodworth argued that, because the bankruptcy discharge made her pre-petition debts to Main uncollectible under bankruptcy law, she no longer owed back rents and expenses and was entitled to be reinstated to a 100% commission basis. The trial court agreed with Chillemi and Main and ordered partial summary judgment in their favor, reasoning:

> [Woodworth] begins her relationship with the defendants by receiving 100% of the commissions she gets from each real estate sale. This relationship continues so long as she pays her share of the monthly office rent and expenses. Should [Woodworth] fail to pay these amounts, the relationship "automatically" changes such that she splits her commissions equally with [Main]. The contract does not say that the defendants' 50% will go to the payment of past expenses owed. While this may be what actually happens, the agreement is simply that the 50% split will kick in when expenses are not paid in a timely manner. The contract does not even say that the arrangement reverts to the original agreement once past expenses are paid, therefore tying the commission allocation to past rents is not appropriate under the contract.
>
> The defendants' interpretation of the contract is based on the language of the contract. [Woodworth's] interpretation re-

quires adding inferences that are not part of the wording of the contract.

The defendants were entitled to retain 50% of the commissions earned by [Woodworth] after the bankruptcy. What they chose to do with the commissions is their concern. If they wished to use the funds to offset owed expenses they could not collect any other way due to the bankruptcy, they were free to do so.

[Footnote omitted]. The trial court ruled the only disputed issue of material fact was whether Woodworth "abandoned" the December 20, 1996 closing she failed to attend, and set that matter for trial.

[¶ 5] Following a bench trial, the trial court found Woodworth had not abandoned the December 20, 1996 closing and was entitled to a commission from that sale. The court explained in a memorandum opinion and order:

A review of the evidence presented at the trial and the earlier filings connected with the Motion for Summary Judgment convinces me my Order for Partial Summary Judgment was correct.

The only issue remaining is [Woodworth's] entitlement to the commission on the [December 20] sale. [Woodworth] worked for approximately two years to complete the sale. The only thing left to do on the sale at the time [Woodworth] left the relationship with the defendant[s] was the closing. Closing was supposed to happen on November 1, 1996 (before [Woodworth] had left) but due to construction delays, did not take place until December. [Woodworth] did not go to the closing. She said she did not think it was appropriate. She further said a person at the bank involved with the closing told [Woodworth] the bank was to send the commission check and should be written to Main....

. . . .

The evidence is that [Woodworth] did not abandon the sale. Exhibit 8 shows the broker's fee to be $2,514. This amount must be reduced by thirty percent because an employee of the defendant[s] did the closing, and $144 in out-of-pocket expenses [Woodworth] owed the defendant[s].

[Woodworth] is entitled to a judgment of $1,615.80.

[¶ 6] Chillemi and Main moved for clarification of the trial court's memorandum opinion and order. They argued the $2,514 broker's fee should be reduced by one-half to correspond to the trial court's earlier ruling on partial summary judgment that Woodworth was no longer working on a 100% commission basis, but had automatically changed to a 50%/50% commission basis because she had failed to pay monthly rentals and expenses. They asserted the 70% of the commission minus $144 in expenses awarded to Woodworth was erroneous because it conflicted with the court's prior opinion on partial summary judgment. The trial court summarily denied the motion in a one sentence order, stating "[t]he Motion for Clarification appears to actually be a motion to amend or 'correct' the judgment and is DENIED." Only Chillemi and Main appealed.

[¶ 7] Although this Court has recognized the validity of a motion for clarification of a judgment, *see, e.g., Kostelecky v. Kostelecky,* 537 N.W.2d 551, 552 (N.D.1995); *Neubauer v. Neubauer,* 524 N.W.2d 593, 595 (N.D.1994), the trial court properly treated Chillemi and Main's motion, which specifically requested "reconsideration" in the alternative, as a N.D.R.Civ.P. 59(j) motion to alter or amend the judgment. Motions to reconsider are treated like motions to alter or amend the judgment under Rule 59(j). *See Austin v. Towne,* 1997 ND 59, ¶ 7, 560 N.W.2d 895. The decision on a motion to amend a judgment under Rule 59(j) rests in the trial court's sound discretion and will not be reversed on appeal unless there is a manifest abuse of discretion. *See Schatke v. Schatke,* 520 N.W.2d 833, 835 (N.D.1994). A trial court abuses its discretion when it misinterprets or misapplies the law, *see Van Klootwyk v. Arman,* 477 N.W.2d 590, 591 (N.D.1991), or when its decision is not the product of a rational mental process leading to a reasoned determination. *See Frafjord v. Ell,* 1997 ND 16, ¶ 5, 558 N.W.2d 848.

[¶ 8] Under the circumstances, we conclude the trial court abused its discretion in failing to reconsider and clarify the judgment. The trial court in its partial summary

judgment ruled Woodworth's failure to pay office rent and expenses automatically changed her 100% commission agreement to a 50%/50% commission agreement, and Main was entitled to retain 50% of the commissions earned by Woodworth. In its ruling after trial on the abandonment issue, the trial court appears to have reaffirmed the prior partial summary judgment ruling, saying the trial evidence "convinces me" that ruling "was correct." We agree with the trial court's construction of the parties' contract.

 [¶ 9] Contracts must be interpreted to give effect to the parties' mutual intent. *Mougey Farms v. Kaspari,* 1998 ND 118, ¶ 19, 579 N.W.2d 583. That intent must be ascertained by the writing alone, if possible, and we construe the contract as a whole to give effect to each of its provisions. *First American Bank v. Hegstrom Co.,* 551 N.W.2d 288, 291 (N.D.1996). If the parties' intentions in a written contract can be ascertained from the writing alone, the interpretation of the contract is a question of law for the court to decide. *Coldwell Banker First Realty v. Kane,* 491 N.W.2d 716, 719 (N.D. 1992).

[¶ 10] When Woodworth signed the "Real Estate Salesperson Contract" with Main, she opted to receive 100% of any earned commissions, but agreed "to pay a monthly rent and expenses to [Main]." The contract provided "[i]f rent is not paid by the 10 th of the month, Sales Agent will automatically forfeit his/her 100% commissions and will immediately go on a 50%/50% split with [Main]. No listings or pending sales can be transferred until all debt to [Main] is paid in full." Woodworth further agreed to comply with Main's office policies and procedures, which provided:

> If an agent opts to go on the 100% commission contract, their bill must be paid in full by the 10 th of the month. There will be a $10.00 per day late fee after the 10 th of the month. If the bill is not paid prior to a closing, the agent will be entitled to only 50% of the commission received by

the office, and will forfeit all claim for any commission over 50%.

[¶ 11] The contract between the parties unambiguously provides that Woodworth's 100% commission agreement would "automatically" change to a "50%/50% split" with Main if she failed to timely pay monthly rent and expenses. It is undisputed she did not timely pay monthly rent and expenses. The contract does not suggest Main is obligated to apply its 50% of the commissions to the breaching salesperson's past due rent and expenses. Nor does it suggest once the past due rent and expenses are paid or are otherwise satisfied the salesperson's agreement automatically reverts back to a 100% commission basis. The trial court correctly concluded Main was contractually entitled to 50% of the commissions earned by Woodworth. However, the trial court's formula for determining the amount of damages owed to Woodworth does not comport in any way with its partial summary judgment ruling.

[¶ 12] Chillemi and Main argue, because Woodworth was on a 50%/50% commission basis under the partial summary judgment ruling, Woodworth should have been given only 50% of the $2,514 commission, or $1,257. From the $1,257 commission, according to Chillemi and Main, 30% should have been subtracted because a Main employee handled the closing of the sale for Woodworth,[1] and $144 in expenses Woodworth owed Main should have been subtracted. Instead, to arrive at the $1,615.80 figure, the trial court appears to have ruled Woodworth was entitled to 100% of the $2,514 commission, less 30% ($754.20) because an employee of Main handled the closing, and less $144 in expenses owed by Woodworth. Alternatively, the trial court might have believed a 70%/30% commission agreement somehow applied and subtracted the $144 in expenses to arrive at its $1,615.80 damage calculation. Under no scenario does the 50%/50% commission basis approved in the partial summary judgment ruling appear to have been applied by the trial court.

[¶ 13] We recognize that, absent a N.D.R.Civ.P. 54(b) certification, the partial

---

1. Main's office policies and procedures, which Woodworth contractually agreed to follow, provided "[i]f a covering agent closes a pending sale for the listing agent, the covering agent will receive 30% of the commission."

summary judgment ruling in this case remained an interlocutory order "subject to revision by the trial court at any time before the entry of judgment adjudicating all the claims." *Belden v. Hambleton*, 554 N.W.2d 458, 460 (N.D.1996). However, there is no indication in the record the trial court changed its mind about the commission percentages it found applicable in the partial summary judgment. Indeed, the trial court essentially reaffirmed that ruling in its memorandum opinion and order after trial. The resulting judgment is therefore internally inconsistent and ambiguous.

[¶ 14] We favor permitting a trial court, upon motion by a party, the ability to clarify obvious inconsistencies and ambiguities in its judgments. *See Anderson v. Anderson*, 522 N.W.2d 476, 478 (N.D.1994). Accordingly, we reverse and remand to the trial court to either apply the correct formula under its partial summary judgment ruling to Woodworth's damages, or clarify and explain its deviation from the partial summary judgment ruling in arriving at the amount of damages in this case.

[¶ 15] Reversed and remanded.

[¶ 16] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.

