2000 ND 41

**Deloris A. DINGER, by and through her attorney in fact, Dale L. DINGER, and Dale L. Dinger, individually, Plaintiffs and Appellants,**

v.

**STRATA CORPORATION, a corporation, and Traffic Safety Services, Inc., a corporation, Defendants and Appellees.**

**No. 990141.**

Supreme Court of North Dakota.

March 21, 2000.

Rehearing Denied April 5, 2000.

Leland F. Hagen, Lee Hagen Law Office, Ltd., Fargo, ND, for plaintiffs and appellants.

Jay H. Fiedler, Pearson Christensen, Grand Forks, ND, and Stephen W. Plambeck, Nilles, Hansen & Davies, Ltd., Fargo, ND, for defendants and appellees.

KAPSNER, Justice.

[¶ 1] Deloris A. Dinger and Dale L. Dinger appealed from a judgment dismissing their action against Strata Corporation ("Strata") and Traffic Safety Services, Inc. ("TSS"). We hold the trial court erred in determining there was no genuine issue of material fact regarding whether Strata and TSS breached duties owed to Dingers. We therefore reverse and remand.

I

[¶ 2] In 1991, Ramsey County decided to construct a bike path adjacent to Ramsey County Highway No. 1. Midwest Engineering, Inc. ("Midwest"), prepared the plans and specifications. Nodak Contracting, a division of Strata, received the construction contract. TSS, a subcontractor, provided and installed traffic signs. The project was completed in the fall of 1992,

and the signs were removed and stored until Ramsey County employees reinstalled them the following spring.

[¶ 3] Deloris Dinger received head injuries in a bicycle accident on September 10, 1993. She was found beside a signpost on the bike path. Deloris had no memory of the accident, and there were no known witnesses. Dingers sued Ramsey County, Midwest, Strata, and TSS, alleging Deloris struck a signpost while riding a bicycle, causing her to lose her balance and fall to the pavement. Dingers alleged the defendants were negligent in the design and construction of the bike path, including the placement of traffic signposts, and alleged the signpost and the design and construction of the bike path constituted a nuisance.

[¶ 4] Strata and TSS moved for summary judgment. The trial court concluded Strata and TSS owed Dingers no duty under the construction contract, Strata and TSS had no duty to foresee the harm suffered by Dingers, and, if any wrongful condition existed, Strata and TSS were not responsible for it. On April 10, 1997, the trial court issued an order granting summary judgment to Strata and TSS. However, no judgment or order directing entry of final judgment was entered.

[¶ 5] The claims against Ramsey County and Midwest proceeded. After four days of trial in October 1998, Dingers reached a settlement agreement with both Ramsey County and Midwest. The trial court subsequently ordered dismissal of the actions against Ramsey County and Midwest.

[¶ 6] In January 1999, Dingers filed a Motion to Reconsider, to Alter or Amend, and for Relief from Order. Dingers argued reversal of the trial court's order granting summary judgment to Strata and TSS was proper because testimony of witnesses at the trial against Ramsey County and Midwest raised genuine factual issues regarding Dingers' claims against Strata and TSS. Dingers asserted the trial testimony of important witnesses differed from the testimony given by those witnesses

during discovery. The trial court denied the motion without comment on the merits.

[¶ 7] On March 16, 1999, the trial court entered a final judgment dismissing all of Dingers' claims against all defendants and awarding TSS and Strata costs and disbursements. Dingers appealed.

## II

[¶ 8] When Dingers brought the motion to reconsider the order for summary judgment, no final judgment had been entered in favor of any of the defendants. The trial court had granted summary judgment in April 1997, but had not directed entry of final judgment dismissing TSS and Strata. Rule 54(b), N.D.R.Civ.P., recognizes that a trial court may direct entry of a final judgment against only some of the parties to a litigation, but until final judgment is entered all orders are subject to revision. Under N.D.R.Civ.P. 54(b):

... if multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of that determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

[¶ 9] Here, the trial court did not direct entry of judgment in favor of Strata and TSS until it issued the final judgment in March 1999, adjudicating the claims against all the defendants in the case. The order granting summary judgment therefore did not terminate the action against Strata and TSS and was not appealable. *See Williams Co. v. Hamilton,* 427 N.W.2d 822, 822 (N.D.1988) (dismiss-

ing an appeal from a summary judgment "[b]ecause the record contain[ed] no order complying with Rule 54(b), N.D.R.Civ.P.").

[¶ 10] Our prior cases make it clear that the trial court was correct in not directing entry of final judgment. The case against Strata and TSS arose from the same occurrence on which the case against the settling defendants was based.

In a multiple party situation 'where the complaint is dismissed as to one defendant but not others, the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants.' Under these circumstances, possibilities abound that the remaining defendants, by virtue of their lack of opportunity to participate, will be prejudiced by the decision on the certified appeal, and that the facts ultimately adduced at trial of the remaining defendants could undermine the soundness of the decision on the certified appeal.

*Peterson v. Zerr,* 443 N.W.2d 293, 298 (N.D.1989) (citations omitted).

[¶ 11] Because the order granting summary judgment was not certified as a final judgment under Rule 54, Dingers' motion for reconsideration of the trial court's order granting summary judgment was proper. As we noted in *Union State Bank v. Woell,* 357 N.W.2d 234, 239 (N.D. 1984), the summary judgment, as an interlocutory order, "remains subject to revision by the court at any time before the entry of judgment adjudicating all claims between all parties." In *Woell* we also expressed the concern that trial of the undismissed claims could substantially undermine the validity of the decision on the motion for summary judgment. *Id.; see also Xerox Corp. v. Genmoora Corp.,* 888 F.2d 345, 356 (5th Cir.1989) (indicating the trial court's grant of summary judgment to only some of the defendants was interlocutory and thus the plaintiff "properly asked the district court to exercise its power to

modify or rescind its interlocutory order"). The evidence adduced at trial of the actions against Midwest and Ramsey County and pointed out in Dingers' motion for relief therefore is part of the record and is appropriate to consider. *See Xerox Corp.* (indicating the plaintiff properly supported its motion for reconsideration by submitting new evidence compiled from the record in related litigation); *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858, 862 (5th Cir.1970) (explaining the court may at any time before final decree modify or rescind an interlocutory order); *Hunteman v. New Orleans Public Service, Inc.*, 119 F.2d 465, 466 (5th Cir.1941) (dismissing plaintiff's appeal of a judgment of dismissal as to one of two defendants in a case because the district court "may yet set aside the order of dismissal and reinstate the action as to the [dismissed defendant]"). *Compare Xerox Corp.* (where the trial court had not certified its grant of summary judgment under Rule 54(b) prior to its denial of the plaintiff's motion for reconsideration and thus the trial court should have considered evidence submitted with the motion for reconsideration), *with Catasauqua Area School Dist. v. Eagle–Picher Indus.*, 118 F.R.D. 566, 567 (E.D.Pa.1988) (where judgment had been entered on the trial court's grant of summary judgment and the plaintiff moved for relief from judgment under F.R.Civ.P. 60(b) but failed to satisfy the requirements under the rule). Under the circumstances, Dingers properly moved for reconsideration of the summary judgment motion brought by Strata and TSS, relying on evidence heard at trial and submitted prior to the final judgment.

### III

■■■ [¶ 12] We have recognized that a motion to reconsider may be treated as a motion to alter or amend the judgment under N.D.R.Civ.P. 59(j), when all issues have been finally adjudicated, even though a final judgment has not been entered. *Woodworth v. Chillemi*, 1999 ND 43, ¶ 7, 590 N.W.2d 446; *Austin v. Towne*, 1997 ND 59, ¶ 7, 560 N.W.2d 895.

A decision on a N.D.R.Civ.P. 59 motion is within the sound discretion of the trial court. We will not reverse the denial of a motion under N.D.R.Civ.P. 59 absent a manifest abuse of discretion. 'A trial court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or if it misinterprets or misapplies the law.'

*Austin*, at ¶ 8 (citations omitted).

[¶ 13] The trial court granted summary judgment concluding Dingers "have failed to show a legal duty owed to [Dingers] by [TSS and Strata] under the construction contract." The order therefore indicates the trial court was applying an erroneous interpretation of the law.

### IV

■■■ [¶ 14] Summary judgment is a procedural device for prompt and expeditious disposition of a controversy without a trial if there is no genuine issue of material fact or if the law is such that resolution of factual disputes will not alter the result. *Miller v. Kloeckner*, 1999 ND 190, ¶ 5, 600 N.W.2d 881 (applying N.D.R.Civ.P. 56). Questions of law are fully reviewable. *Id.* Negligence actions are ordinarily inappropriate for summary judgment. *Gullickson v. Torkelson Bros., Inc.*, 1999 ND 155, ¶ 6, 598 N.W.2d 503. A party seeking summary judgment has the burden of clearly demonstrating there is no genuine issue of material fact. *Hurt v. Freeland*, 1999 ND 12, ¶ 8, 589 N.W.2d 551. A party resisting a motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Id.* All favorable inferences must be drawn in favor of the party opposing a motion for summary judgment, and we assume the truth of the assertions made by the party opposing the motion. *Fleck v. ANG Coal*

*Gasification Co.,* 522 N.W.2d 445, 448 (N.D.1994).

[¶ 15] Dingers contend Strata and TSS owed them a duty of care; they were not relieved of liability by the accepted work doctrine or by following the plans and specifications for the bike path; and they failed to comply with contract documents and specifications. Dingers argue that, under the contract documents, Strata and TSS were required to report any conflict, error, or discrepancy in contract documents to the engineer, and obtain a written interpretation or clarification before proceeding; the work must comply with the contract documents; the contractors were to notify the engineer if they saw the specifications or drawings varied from laws or regulations; all laws, rules, and regulations apply, and contractors are to be thoroughly familiar with the contract documents; and the contract documents require that traffic control sign details not otherwise specified shall conform to the Manual on Uniform Traffic Control Devices ("MUTCD").[1] Dingers assert the plans and specifications were silent with regard to the location of signs or signposts, the height of signs, or "the existence, dimensions, or configuration of any of the striping on the roadway," and contend "[t]he negligence of TSS and Strata consisted of its failure to request information from the engineer about the location of the sign, their failure to consult the MUTCD, and their failure to place the signs at the appropriate height."

[¶ 16] Strata and TSS had a duty to exercise due care in the performance of the construction project. "Every person is bound without contract to abstain from injuring the person or property of another or infringing upon any of his rights." N.D.C.C. § 9–10–01. "Everyone is responsible . . . for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person." N.D.C.C. § 9–10–06 (1987). "Every person has a duty to act reasonably to protect others from harm." *Barsness v. General Diesel & Equip. Co., Inc.,* 383 N.W.2d 840, 845 n. 5 (N.D.1986). "[O]ne who undertakes to design and construct a structure has a duty to exercise ordinary care and skill to protect any who foreseeably, or with reasonable anticipation, may be injured by the failure to do so." *Sime v. Tvenge Assocs. Architects & Planners, P.C.,* 488 N.W.2d 606, 610 (N.D. 1992). "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Johnson v. American Motors Corp.,* 225 N.W.2d 57, 65 (N.D.1974) (quoting *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99, 100 (1928)). Strata and TSS had a duty to exercise reasonable care to protect travelers on the bike path.

[¶ 17] "Generally, a contractor may be relieved of liability if he followed the contractee's plans or specifications which were defective or insufficient, and the defect or insufficiency caused the damage." *Umpleby v. State,* 347 N.W.2d 156, 162 (N.D.1984). However, a contractor who follows the owner's plans and specifications may be liable if they are "so obviously defective and dangerous that no reasonable man would follow them." W. Page Keeton, *Prosser and Keeton on Torts,* § 104A, pp. 723–24 (5th ed.1984); *see also Oxley v. Sabine River Authority,* 663 So.2d 497, 504 (La.App.1995) (indicating a contractor is not relieved of liability if the contractor has justifiable reason to believe adherence to plans and specifications would create a hazardous condition); *Meseck v. General Elec. Co.,* 195 A.D.2d 798, 600 N.Y.S.2d 384, 386 (1993) (noting a contractor may justifiably rely on the own-

---

1. Paragraph 1A–4, MUTCD, provides in part: The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traf-

fic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation.

er's plans and specifications unless they are so apparently defective a builder of ordinary prudence would be placed upon notice the work was dangerous and likely to cause injury). Based upon testimony presented at trial there was conflicting evidence about whether Strata and TSS had complied with the owner's plans and specifications.

## V

[¶ 18] Asserting Strata and TSS failed to comply with contract specifications and the MUTCD, Dingers argue there is a genuine issue of material fact regarding whether Strata and TSS breached the duty owed to them.

[¶ 19] Under the contract, Strata was required to consult with the engineer if there was a conflict, error, or discrepancy in the contract documents. Strata similarly was required to obtain authorization from the engineer to supplement the requirements of the contract and to refer to the MUTCD where contract specifications were silent. The MUTCD contains standards for sign placement along a bike path. The standards refer to both height above and distance from the bike path. The contract was silent on the location of signs along the bike path.

[¶ 20] Dingers specifically point out trial testimony of Floyd Austin and Ron French. The testimony of Austin and French differed significantly from the testimony they had given during discovery on matters which are material to the Dingers' claim. Austin, the County Highway Superintendent, testified in deposition he knew of no way in which the sign deviated from the plans or the MUTCD. At trial, however, Austin testified placement of the sign on the bike path itself was not in conformity with the MUTCD or the state road and bridge manual. French, a civil engineer with Midwest, testified in his deposition he did not rely on any particular portions of the "standard specs for road and bridge construction" in regard to the signing. French then testified at trial he had "indirectly" put specifications regarding the sign in the plans. French further

testified the section of the plans entitled "Governing Specifications" indicated the governing specifications would be the North Dakota State Highway Department Road and Bridge Construction Manual which in turn refers to the MUTCD. Mr. French testified: "And of course, the people putting up the signs are required to follow the specifications and in turn means that they have put them up in accordance with the manual." Dingers could not have anticipated this change in testimony at the time summary judgment was granted and properly asked the trial court to reconsider dismissal of the claims against Strata and TSS.

[¶ 21] The trial court denied the motion to reconsider without analysis on the merits. We infer, therefore, the trial court adhered to its erroneous conclusion Strata and TSS had no duty to the Dingers and failed to consider the evidence introduced at trial in the light most favorable to Dingers as the party opposing the motion for summary judgment.

[¶ 22] We conclude the evidence in the record raises a genuine issue of material fact as to whether Strata and TSS complied with the plans and specifications. We therefore hold the trial court abused its discretion in failing to reconsider its summary judgment order.

## VI

[¶ 23] Because there is a genuine issue of material fact regarding whether Strata and TSS breached duties owed to Dingers, we reverse and remand for further proceedings consistent with this opinion.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 25] Because the trial court appropriately granted summary judgment and did not abuse its discretion in denying reconsideration, I respectfully dissent.

## I

[¶ 26] Dingers contend Strata and TSS owed them a duty of care; they were not relieved of liability by the accepted work doctrine or by following the plans and specifications for the bike path; they failed to comply with contract documents and specifications; and their placement of the sign constituted a nuisance because it violated N.D.C.C. § 24–12–02(1), which provides "[n]o person may . . . [o]bstruct any public highway in any manner with intent to prevent the free use thereof by the public," and the Manual on Uniform Traffic Control Devices ("MUTCD") ¶ 1A–3.1, which provides in part: "Any unauthorized sign placed on the highway right-of-way by a private organization or individual constitutes a public nuisance." Dingers argue that under the contract documents, Strata and TSS were required to report any conflict, error, or discrepancy in contract documents to the engineer, and obtain a written interpretation or clarification before proceeding; the work must comply with the contract documents; the contractors were to notify the engineer if they saw the specifications or drawings varied from laws or regulations; all laws, rules and regulations apply, and contractors are to be thoroughly familiar with the contract documents; and the contract documents require that "traffic control sign details not otherwise specified shall conform to the MUTCD."[2] Dingers assert the plans and specifications were silent with regard to the location of signs or signposts, the height of signs, or "the existence, dimensions, or configuration of any of the striping on the roadway," and contend "[t]he negligence of TSS and Strata consisted of its failure to request information from the engineer about the location of the sign, their failure to consult the MUTCD, and their failure to place the signs at the appropriate height."

## II

[¶ 27] Under N.D.R.Civ.P. 56, a summary judgment may be granted if there is no genuine issue as to any material fact, and a party is entitled to a judgment as a matter of law. Summary judgment is a procedural device for prompt and expeditious disposition of a controversy without a trial if there is no genuine issue of material fact or if the law is such that resolution of factual disputes will not alter the result. *Miller v. Kloeckner,* 1999 ND 190, ¶ 5, 600 N.W.2d 881. Questions of law are fully reviewable. *Id.* Negligence actions are ordinarily inappropriate for summary judgment. *Gullickson v. Torkelson Bros., Inc.,* 1999 ND 155, ¶ 6, 598 N.W.2d 503; *Barsness v. General Diesel & Equip. Co.,* 383 N.W.2d 840, 844 (N.D. 1986). A party seeking summary judgment has the burden of clearly demonstrating there is no genuine issue of material fact. *Hurt v. Freeland,* 1999 ND 12, ¶ 8, 589 N.W.2d 551. A party resisting a motion for summary judgment may not simply rely upon the pleadings or upon unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact, and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. *Id.* Factual assertions in a brief are insufficient to raise an issue of material fact. *L.C. v. R.P.,* 1997 ND 96, ¶ 6, 563 N.W.2d 799; *Northwestern Equip., Inc. v. Badinger,* 403 N.W.2d 8, 10 (N.D.1987). All favorable inferences must be drawn in favor of the party opposing a motion for summary judgment, and we assume the truth of the assertions made by the party opposing the motion. *Fleck v. ANG Coal Gasification Co.,* 522 N.W.2d 445, 448 (N.D.1994). In ruling on a motion for

2. Paragraph 1A–4, MUTCD, provides in part:
The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation.

summary judgment, the trial court must consider the substantive burden of proof at trial. *Hurt*, at ¶ 8. Summary judgment is not properly granted merely because the trial court believes the movant will prevail if the action is tried on the merits. *Federal Land Bank v. Thomas*, 386 N.W.2d 29, 30–31 (N.D.1986); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2728 pp. 518–23 (3d ed.1998).

[¶ 28] "Every person is bound without contract to abstain from injuring the person or property of another or infringing upon any of his rights." N.D.C.C. § 9–10–01. "Everyone is responsible ... for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person." N.D.C.C. § 9–10–06. "Every person has a duty to act reasonably to protect others from harm." *Barsness*, 383 N.W.2d at 845 n. 5. "[O]ne who undertakes to design and construct a structure has a duty to exercise ordinary care and skill to protect any who foreseeably, or with reasonable anticipation, may be injured by the failure to do so." *Sime v. Tvenge Assocs. Architects & Planners, P.C.*, 488 N.W.2d 606, 610 (N.D.1992). "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Johnson v. American Motors Corp.*, 225 N.W.2d 57, 65 (N.D.1974) (quoting *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 100 (1928)). Strata and TSS had a duty to exercise reasonable care to protect travelers on the bike path.

[¶ 29] "Generally, a contractor may be relieved of liability if he followed the contractee's plans or specifications which were defective or insufficient, and the defect or insufficiency caused the damage." *Umpleby v. State*, 347 N.W.2d 156, 162 (N.D. 1984). However, a contractor who follows the owner's plans and specifications may be liable if they are "so obviously defective and dangerous that no reasonable man would follow them." W. Page Keeton, *Prosser and Keaton on Torts*, § 104A, pp.

723–24 (5th ed.1984). *See also Oxley v. Sabine River Authority*, 663 So.2d 497, 504 (La.Ct.App.1995) (contractor not relieved of liability if he has justifiable reason to believe adherence to plans and specifications would create a hazardous condition); *Meseck v. General Elec. Co.*, 195 A.D.2d 798, 600 N.Y.S.2d 384, 386 (1993) (contractor may justifiably rely on owner's plans and specifications unless they are so apparently defective, an ordinary builder of ordinary prudence would be placed upon notice the work was dangerous and likely to cause injury).

[¶ 30] According to his deposition, Nicholas Richter, an inspector with the Ramsey County Highway Department, marked the sign locations on the bike path after he had been told where to put them by either John Olson, a Midwest consulting engineer who worked on this project for Ramsey County, or Floyd Austin, the Ramsey County Highway Supervisor. Floyd Austin said in a deposition he was not aware of any way in which the sign deviated from the plans, specifications, or requirements of the MUTCD. John Olson said in a deposition he did not know of anything TSS "did on this job that did not meet the requirements of the plans or specifications ... [or] the requirements of the Manual on Uniform Traffic Control Devices." In his deposition, Ronald French, a Midwest consulting engineer who worked on the project for Ramsey County, said he did not know of any way in which TSS failed to comply with the plans, specifications, instructions given by the engineer, or the MUTCD. Olson said in his deposition the signs were placed where they were "[b]ecause ... there was no ditch in between or any separation in between the bike path and the roadway," putting the sign on the other side of the bike path would have been confusing to motorists, and "where you have a bike path that is right adjacent to a highway, your bigger danger is that the bicyclist is going to get hit by a car than the bicyclist is going to run into the sign."

[¶ 31] In opposing the pretrial motions for summary judgment dismissing TSS and Strata, Dingers did not present evidence disputing the deposition testimony that nothing Strata and TSS did in providing and installing the sign failed to meet the requirements of the plans and specifications, the instructions of the engineer, or the requirements of the MUTCD. Nor have Dingers drawn our attention to any competent, admissible evidence they presented to the trial court in opposing the pretrial motion for summary judgment showing Strata or TSS had any reason to believe adherence to the plans and specifications would create a hazardous condition, or that the plans and specifications were so obviously defective and dangerous no reasonable person would follow them. Therefore, Dingers failed to demonstrate the existence of a genuine issue of material fact precluding summary judgment on their negligence claims before the trial court ruled on the pretrial motion for summary judgment.

### III

[¶ 32] After the court dismissed the claims against Strata and TSS, Dingers' claims against Ramsey County and Midwest proceeded to trial. However, those claims were settled after four days of trial, and judgments of dismissal by stipulation of the parties were issued on December 3, 1998, and January 4, 1999.

[¶ 33] On January 11, 1999, Dingers filed a motion for reconsideration, alteration, amendment of, or relief from the trial court's April 10, 1997, order granting the Strata and TSS motions for summary judgment. On March 12, 1999, the trial court issued an order denying the motion and ordered the entry of a final judgment dismissing all of Dingers' claims. In their supporting brief, Dingers asserted, in part:

There is new evidence available because of developments at the trial. It appears quite clear from the testimony of various witnesses, including Mr. Austin, the county road superintendent, Mr. Olson and Mr. French, the engineers, and Mr. Daubert, Plaintiffs' expert, that

the only entity which made any decision regarding the height of the sign was TSS, the company which supplied the sign posts and the signs themselves. Second, the testimony of Dr. Rice, the neurosurgeon, and Mr. Daubert both indicate that the damage sustained by Deloris Dinger was caused by her head striking the sign itself.

Strata and TSS asserted the motion was untimely and Dingers did not show the new evidence could not, with reasonable diligence, have been discovered before the motions for summary judgment were filed. Dingers filed a supplemental brief and submitted the new evidence they relied on, which was trial testimony of several witnesses.

[¶ 34] Olson testified at the trial a "two-foot buffer zone" was added that was not "on the original plan." Olson testified he did not recall being "asked for any interpretation of the documents; that is an interpretation of the location of the signs in the buffer zone." Olson testified he did not recall the county communicating with him "about the actual location of the sign" or "with regard to the location of the striping and the signs."

[¶ 35] Austin testified at trial he did not remember if he gave Richter "any direction as to where [the sign] was to be laterally." He also testified the sign looks like it is on the bike path, and:

Q. But there's nothing on the plan, is there, that says that the sign is to go on the traffic surface of the bike path, is there?

A. No.

Q. And there's nothing in the uniform manual or the state road and bridge manual that says that it's proper to put a sign right on the traveled portion, is there?

A. No.

French testified at trial:

Q. Did you understand that there was a portion of it that—let me ask you this, when you designed this bike path,

did you consider the manual was a reference that you should rely on?

A. Yes, we used that as a guide in designing the bike path.

Q. Okay, at page 9B. I'd like to show you part 9B–2, does it say in this section that "where signs are to serve both bicyclists and motorists, mounting heights and lateral placement shall be specified as specified in Part II, Signs—early part of the manual—Figure 9–1 illustrates typical signing placement for bicycle trails. Overhead sign clearance on bicycle trails shall be a minimum of 8 feet. The clearance provided should also be adequate for the typical maintenance vehicles used on the bike way and where signs are for the exclusive use of the bicyclists, care should be taken that that they are located so that motorists are not confused by them." It's hard to read. From lateral distance over to the right edge of sign should be three feet?

A. Yes, it indicates three feet.

Q. Then is there some recommendations from the lower part of the sign downward of eight feet or am I—that's six feet?

A. The vertical distance that 5 feet maximum and 4 feet minimum.

Q. That's where it's laterally off?

A. That's right.

Q. Did you put anything in the plans themselves to the builder or whoever was reading them how high the sign should be?

A. Yes, indirectly we did.

Q. And how did you do that indirectly?

A. On page of your plans, there is a section called "Governing Specifications" that indicate that the governing specifications here would be North Dakota State Highway Department Road and Bridge Construction Manual.

[¶ 36] David Daubert, an accident reconstruction engineer, testified at trial a manual by the American Association of State Highway and Transportation Officials says "signs should not be lower than 8 feet in order to accommodate the height of the bicycle rider." He also testified that, in his opinion, the design and construction of the bike path "did not comply with accepted civil engineering practices" for two reasons: (1) the bike path was a "two-way facility" instead of having separate one-way paths on opposite sides of the roadway; and (2) "you've in essence put an obstacle into the path itself, into the facility. The sign itself wasn't high enough. People were going to run into it."

[¶ 37] Motions to reconsider are treated like motions to alter or amend judgments under N.D.R.Civ.P. 59. *Woodworth v. Chillemi*, 1999 ND 43, ¶ 7, 590 N.W.2d 446; *Ellingson v. Knudson*, 498 N.W.2d 814, 817 n. 5 (N.D.1993). The trial court's decision on such a motion will be reversed on appeal only for an abuse of discretion. *Woodworth*, at ¶ 7; *Ellingson*, at 818. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, *Lovin v. Lovin*, 1997 ND 55, ¶ 14, 561 N.W.2d 612, its decision is not the product of a rational mental process, *id.*, or it misinterprets or misapplies the law, *Woodworth*, at ¶ 7.

[¶ 38] Dingers were seeking relief on the ground of newly discovered evidence. Relief under either N.D.R.Civ.P. 59 or 60 requires that the newly discovered evidence be evidence which could not have been discovered earlier through the exercise of diligence.

> Motions for "reconsideration" do not provide litigants with an opportunity for a "second bite at the apple" or allow them, like Emperor Nero, to "fiddle as Rome burns." Such motions are not vehicles for relitigating old issues. Courts properly decline to consider new arguments or new evidence on reconsideration where those arguments or evidence were available earlier.

Steven Baicker–McKee, William M. Janssen, and John B. Corr, *Federal Civil Rules Handbook* 749 (2000). "[A] motion for reconsideration is an improper vehicle to introduce evidence previously available." *Bally Export Corp. v. Balicar, Ltd.*, 804

F.2d 398, 404 (7th Cir.1986). A movant supplementing a motion for reconsideration of an order for summary judgment with additional evidence may be required to show the evidence is newly discovered or that counsel had made a diligent but unsuccessful effort to discover the evidence. 27A *Fed. Proc., L.Ed.* § 62:756 (1996). "In preparing for trial, a party must marshal all of the available evidence through discovery proceedings." *Perry v. Reinke,* 1997 ND 213, ¶ 29, 570 N.W.2d 224. Evidence produced, after trial, that was easily discoverable before trial is not newly discovered evidence. *Id.* at ¶ 28.

[¶ 39] The majority says: "The MUTCD contains standards for sign placement along a bike path. The standards refer to both height above and distance from the bike path." However, no standard has been shown to have been breached. Section 9B–2, MUTCD, provides in part: "Figure 9–1 illustrates typical signing placement for bicycle trails. Overhead sign clearance on bicycle trails shall be a minimum of 8 feet." Figure 9–1, MUTCD, which "illustrates typical signing placement for bicycle trails," shows sign edges being three to six feet from the edge of a bicycle trail and at a height of four to five feet. The sign involved here was not "typical signing placement" as depicted in Figure 9–1. No overhead signs of a kind illustrated in the MUTCD were involved here, thus the minimum specified clearance of eight feet for overhead signs is inapplicable here. Although Figure 9–1 illustrates "typical signing placement for bicycle trails" and depicts distance and height ranges, the MUTCD contains no textual requirement of such distance and height parameters.

[¶ 40] Because the trial court did not explain why it denied Dingers' motion to reconsider, the majority infers, at ¶ 21, "the trial court adhered to its erroneous conclusion Strata and TSS had no duty to the Dingers and failed to consider the evidence introduced at trial in the light most favorable to Dingers as the party opposing the motion for summary judgment." I would not draw that inference.

We have held, for example, "[a] juvenile court is 'deemed to have properly considered and to have properly weighed the relevant information supplied for its consideration.'" *In re J.A.G.,* 552 N.W.2d 317, 324 (N.D.1996) (quoting *Commonwealth v. McDonald,* 399 Pa.Super. 250, 582 A.2d 328, 333 (1990)). *See also State v. Syvertson,* 1999 ND 134, ¶ 21 n. 3, 597 N.W.2d 652 ("In any event, a trial court is presumed to have done its duty."); *Overboe v. Odegaard,* 496 N.W.2d 574, 578 (N.D.1993) ("it will be presumed that the court heard and considered the necessary evidence to enable it to give judgment").

[¶ 41] Dingers' pretrial opposition to the motions for summary judgment focused on the location of the sign, while their posttrial submission to the trial court focused on the height of the sign. The trial testimony presented to the trial court as new evidence for reconsideration of the court's summary judgment order was discoverable before the trial court initially ruled on the motions for summary judgment. Rather than a change in testimony that Dingers could not have anticipated, one could as easily infer Dingers' motion for reconsideration reflected a change in strategy after their first strategy failed. The trial court was not required to give Dingers another try at establishing another theory.

[¶ 42] The trial testimony presented to the trial court as new evidence for reconsideration of the court's summary judgment order was easily discoverable before the trial court initially ruled on the motions for summary judgment. The trial court did not abuse its discretion in denying Dingers' motion for reconsideration, alteration, amendment of, or relief from the court's order granting summary judgment.

### IV

[¶ 43] I would affirm.

[¶ 44] Dale V. Sandstrom